No. 82-139

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

DUANE E. DORN, individually and
as representative for all initiative
petitioners,

Plaintiffs and Appellants,

vs.

BOARD OF TRUSTEES OF BILLINGS
SCHOOL DISTRICT #2, Yellowstone
County; VIRGIL POORE, Superintendant
of School District #2, et al.,

Defendants and Respondents.

---

Appeal from:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone
              Honorable William J. Speare, Judge presiding.

Counsel of Record:

        For Appellants:

            Jenkins Law Firm, Helena, Montana
            Kelly Jenkins argued, Helena, Montana
            Patten & Renz, Billings, Montana

        For Respondents:

            Harold F. Hanser, County Attorney, Billings, Montana
            David Hoefer argued, Deputy County Attorney, Billings
             Montana
            Felt & Martin, Billings, Montana
            Laurence R. Martin argued and Sol Lovas argued, Billings,
             Montana

        For Amicus Curiae:

            T. G. Speare, Billings, Montana

---

                                Submitted:  December 12, 1982

                                  Decided:  March 17, 1983

Filed:  MAR 17 1983


_Ethel M. Harrison_
_____
                        CLerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

This appeal results from a Thirteenth Judicial District Court judgment declaring that respondent's school policy, which prohibits the collection of initiative petition signatures within buildings being used as polling places on election days, does not violate appellant's statutory or constitutional rights.

This court is asked to decide whether the class appellant represents has a right to collect initiative petition signatures within school buildings being used as polling places on election days and whether the school district's policy of exclusion violates that right.

Appellant asserts his collection activity within school buildings used as polling places is protected from the school district's exclusionary policy under section 13-35-218(5), MCA and several provisions of the state and federal constitutions. Appellant specifically claims the policy violates equal protection, the First and Fourteenth Amendments and their state counterparts, and the express right to initiative guaranteed by the 1972 Montana Constitution.

Before the 1981 general election appellant Dorn contacted Rimrock Elementary School officials to inform them that he intended to collect signatures on an initiative petition inside the Rimrock School on election day. Respondent school district denied him permission to enter the school building for that purpose.

On November 3, 1981, over the protests of the Rimrock School principal, appellant entered the school building. In the hallway appellant approached two people who were on their

way to vote in the gymnasium where the voting booths were located. The voters signed the initiative petition after it was explained to them. The principal then returned to admonish appellant that respondent Poore intended to have him ejected from the building by the police. Appellant remained. Shortly thereafter, respondent Poore and police arrived and requested appellant leave the premises. Under threat of arrest appellant left the building.

Appellant, later that day, returned to the school building with several other persons to solicit signatures. Appellant and associates entered the building under authority of a Thirteenth Judicial District Court temporary restraining order enjoining the school district from preventing appellant from soliciting signatures within school buildings being used as polling places.

Pursuant to party agreement and court approval, hearing on the temporary order and order to show cause was cancelled. The temporary order expired by its own terms. Thereafter, the District Court joined respondent Halland, Yellowstone County's election administrator, as party defendant and certified appellant Dorn to represent a class of persons who collect or intend to collect initiative petition signatures at polling places on election days. The cause was submitted to the trial court on a set of agreed facts and motions for summary judgment.

The District Court rendered summary judgment on behalf of respondents, concluding:

" 1. The school district, as a property owner, has the right to prohibit the solicitation of initiative petition signatures within its buildings while they are being used as polling places.
2. The school district's policy permitting plaintiff initiative petitioners to solicit signatures outside, but not inside, school buildings while they are being used as polling

3

places is a reasonable regulation of materially disruptive conduct.

3. The school district's policy permitting plaintiff initiative petitioners to solicit signatures outside, but not inside, school buildings while they are being used as polling places does not violate any right of the plaintiffs guaranteed by the United States or Montana Constitutions.

4. The school district's policy permitting plaintiff initiative petitioners to solicit signatures outside, but not inside, school buildings while they are being used as polling places does not violate the provisions of Section 13-35-218(5), MCA, or any other Montana statute.

5. The private owners of property used as polling places may at any time and for any reason prohibit the solicitation of initiative petition signatures thereon.

6. The County Election Administrator has a duty and may prohibit persons gathering signatures for an initiative petition at any time that he believes said process is interfering with the election process."

We hereafter detail the agreed facts and the District Court findings which bear upon the issues to be resolved.

Posted throughout school buildings within the school district were signs requesting that all persons who enter school buildings, other than students and school personnel, report to the school principal to obtain permission to be in the building. The school board waives this requirement for voters because of the limited purpose and duration of their visit.

Additionally the school district has a written policy prohibiting school or students from serving as enrollment centers or publicity agents for in non-school connected activities. This policy has been interpreted to prohibit any kind of solicitation within school buildings, including the solicitation of initiative petition signatures on election days; however, under this policy, the school district has granted standing approval to several children's organizations to distribute information about their organization and activities in school buildings on designated days.

4

Meanwhile the school district has applied its policy to deny all requests to solicit initiative petition signatures in school buildings on election days. Access to school buildings has been denied to signature solicitors without regard to the contents of a particular petition or the conduct of an individual solicitor. Those who have atempted to solicit signatures in contravention of this policy have been asked to leave.

The policy does not pertain to solicitation of initiative petition signatures on grounds adjacent to school buildings. Such solicitation occurs regularly on election days. The school board has made no attempt to prohibit or otherwise regulate outdoor solicitation.

In Yellowstone County polling places are located in rooms or hallways of private and public buildings. In the past approximately twenty (20) schools within the school district have been used as polling places. Upon entering a school building voters are directed to the polling area by posted signs. Most signature solicitors congregate outside the main entrance to school buildings because that is where most voters enter.

At the time this dispute arose approximatley eight to ten initiative petitions either had been or were in the process of being approved for signature collection. Though some were highly controversial none of the initiative petitions for which signatures were sought were ballot issues at the time of solicitation.

The conduct and status of individual solicitors varies in that some are paid and others volunteer; some are peaceful and others are not. It is agreed that each solicitor explains the initiative petition to the voter in the process of requesting his or her signature. When attempts to

5

persuade a voter to sign precipitate arguments, the instigator may be either solicitor or voter. Under the present school district policy these arguments necessarily occur outside school buldings; were the policy changed it is stipulated that any such arguments would occur inside school buildings.

It is agreed noise in hallways distracts students, impairs their concentration, lowers their level of functioning, and affects classroom discipline and teaching effectiveness.

The school district acknowledges the main purpose behind its policy prohibiting solicitation within school buildings is to prevent problems before they start. Its primary concerns are potential disruption of school activities and possible security risks that would attend a more permissive solicitation policy.

The District Court found that the school district's reasons for prohibiting indoor solicitation were valid concerns and fully justified its policy.

The District Court further found that the past activities of solicitors outside school buildings had reasonably lead the school district to forecast substantial disruption and material interference with school functioning if initiative petitioners were permitted inside school buildings.

Finally the District Court found that the process of soliciting initiative petition signatures is not part of the election process.

ISSUE ONE: Whether the school district's policy violates section 13-35-218, MCA?

Appellant contends the school district's policy violates section 13-35-218(5), MCA, because it prohibits solicitation

which otherwise would be permitted under statute. Appellant believes the legislative history of a recent amendment to section 13-35-218, MCA, supports his contention.

Prior to 1981, section 13-35-218, MCA, provided in pertinent part, "[n]o person may obstruct the doors or entries of any polling place." Section 13-35-218(4), MCA (1979). During the 1981 legislative session House Bill 336 was introduced to amend section 13-35-218, MCA, to prohibit solicitation of signatures for ballot issues within or near polling places. However, the legislature rejected an absolute ban on solicitation at polling places and revised the bill to amend the statute to its present form. Section 13-35-218(5), MCA, states:

> "No person on election day may obstruct the doors or entries of any polling place or engage in any solicitation of a voter within the room where votes are being cast or elsewhere in any manner which in any way interferes with the election process or obstructs the access of voters to or from the polling place."

Appellant concludes that the legislature's intention in amending the statute was to preserve the right to collect initiative petition signatures within and at polling places and the school district's policy must be permanently enjoined because it thwarts that intent.

The Court is not persuaded by appellant's argument. Its function in construing and applying statutes is to effect legislative intent. The primary tool for ascertaining intent is the plain meaning of the words used. The Court properly refers to legislative history only when intent cannot be determined from the content of the statute. The instant statute does not necessitate such an inquiry.

Section 13-35-218(5), MCA, clearly and unambiguously proscribes a manner of solicitation which results in interference with the election process or obstruction of

access to and from polling places. In no way does its wording constitute a guarantee of access to the polling place to those persons whose manner of solicitation effects no interference or obstruction. Whatever the extent of appellant's right to collect initiative petition signatures, its origin is not in section 13-35-218(5), MCA. The most that can be read from the words chosen by the legislature is that some manner of solicitation at polling places on election day may be permitted. That is not equivalent to saying it is guaranteed.

We hold that section 13-35-218(5), MCA, in and of itself, does not preclude the school district from prohibiting solicitation of initiative petition signatures within school buildings used as polling places. The District Court committed no error in concluding the school district's policy did not violate that statute.

ISSUE TWO: Whether the school district's policy violates appellant's federal and state constitutional rights of free speech, assembly and petition or initiative?

Appellant asserts his right to collect signatures for initiative petitions is guaranteed by equivalent but independent provisions of the state and federal constitution.

The 1972 Montana Constitution reserves unto the people the power of initiative. Article V, section 1, Montana Constitution (1972). This reservation would be ineffectual if the means by which initiative is invoked, were not afforded constitutional protection. Therefore, we hold that the First Amendment and its state counterpart, Article II, section 6 and 7, Montana Constitution (1972), protects appellant's activities. The First Amendment was fashioned to embrace precisely what the initiative process promotes: "[the] unfettered interchange of ideas for the bringing about

8

of political and social changes desired by the people." Roth
v. United States (1956) 354 U.S. 476, 484, 77 S.Ct. 1304,
1308, 1 L.Ed.2d 1498, cited in Lewis v. Reader's Digest
(1973) 162 Mont. 401, 409, 512 P.2d 702, 706. Accord, State
v. Conifer Enterprises, Inc. (1973) 82 Wash.2d 94, 508 P.2d
149.

The remaining question is whether appellant can be
constitutionally prohibited from exercising his First
Amendment liberties in school buildings being used as polling
places.

First Amendment protection does not assure appellant's
activities will be beyond restriction, as the First Amendment
does not prohibit all regulation of expressive activities.
First Amendment rights may be governed by appropriate
limitations on the time, place and manner of their exercise.
See, e.g., Heffron v. International Society for Krishna
Consciousness, Inc., (1981) 452 U.S. 640, 101 S.Ct. 2559, 69
L.Ed.2d 298 (state fair rule prohibiting sale or distribution
of any merchandise including printed or written material
except from fixed location); Cox v. New Hampshire (1941) 312
U.S. 569, 61 S.Ct. 762, 85 L.Ed 1049. (statute prohibiting
parade or procession upon a public street without a special
license). And, the state has the power to substantially
restrict or even prohibit exercise of First Amendment rights
on property owned by the government "to preserve the property
under its control for the use to which it is lawfully
dedicated." Adderley v. Florida (1966) 385 U.S. 39, 47, 87
S.Ct. 242, 247, 17 L.Ed.2d 149 (criminal trespass convictions
upheld where demonstration on jailhouse grounds not
ordinarily open to public obstructed the jail driveway).
Indeed, the so-called "non-public forum" cases consistently
establish that government ownership or control of a facility

9

does not guarantee the public absolute and unrestricted access for the purpose of exercising First Amendment liberties. See, e.g., U.S. Postal Service v. Council of Greenburgh Civic Associations (1981) 453 U.S. 114, 101 S.Ct. 2676, 69 L.Ed.2d 517 (statute prohibiting distribution of unstamped mailable matter in authorized letterboxes); Jones v. North Carolina Prisoners' Labor Union, Inc. (1977) 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (prison regulation prohibiting a prisoner's union from holding meetings, soliciting other inmates for membership or obtaining bulk mailing privileges); Greer v. Spock (1976) 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (army regulation prohibiting political speeches on military base); and Lehman v. City of Shaker Heights (1974) 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (municipal policy prohibiting paid political advertising in its mass transit system).

It is equally well established, however, that when a government owned or controlled facility is opened as a forum for assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say, Police Dept. of City of Chicago v. Mosley (1972) 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212, and differential access policies must be factually based and finely tailored to serve substantial state interests. See, e.g., Perry Local Educators' Association v. Hohlt (7th Cir. 1981) 652 F.2d 1286 prob. juris. noted, 454 U.S. 1140; Gay Students Organization v. Bonner (1st Cir. 1974) 509 F.2d 652; National Socialist White People's Party v. Ringers (4th Cir. 1973) 473 F.2d 1010; Hennessey v. Independent School District No. 4 (Okla. 1976) 552 P.2d 1141.

Likewise, when property owned or controlled by the government is a public forum, few restrictions on its use for

10

exercise of First Amendment freedoms are tolerated; any regulation must not only be content-neutral but must be closely related to a significant governmental interest and must be the least restrictive means of serving that interest. See, e.g., New York City Unemployed and Welfare Council v. Brezenoff (2nd Cir. 1982) 677 F.2d 232; ACORN v. Dallas County Hospital District (5th Cir. 1982) 670 F.2d 629, modifying 656 F.2d 1175 and reversing 478 F.Supp 1250.

Appellant contends this Court should employ the test articulated in Grayned v. City of Rockford (1972) 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222, to determine whether the school district's policy constitutes reasonable regulation of expressive activity in school buildings on election days. We agree.

In Grayned, several persons who participated in a demonstration on a public sidewalk near a high school were convicted under an anti-noise ordinance, which read in pertinent part, as follows:

> "[N]o person, while on public or private grounds adjacent to any building in which a school or any class thereof is in session, shall willfully make or assist in the making of any noise or diversion which disturbs or tends to disturb the peace or good order of such school session or class thereof. . . "

Evidence at trial was sharply contradictory regarding the disruptive nature of the demonstration. The demonstrators challenged the ordinance on its face as being overbroad contending it unduly interfered with their First and Fourteenth Amendment rights to picket on a public sidewalk near a school.

The United States Supreme Court upheld the ordinance and reiterated that reasonable "time, place, and manner" regulations on the right to use a public place for expressive

11

activity, may be necessary to further significant governmental interests. The Court explained:

> "The nature of a place, 'the pattern of its normal activities, dictate the kinds of regulations of time, place, and manner that are reasonable.' Although a silent vigil may not unduly interfere with a public library, making a speech in the reading room almost certainly would. That same speech should be perfectly appropriate in a park. The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time . . . [I]n assessing the reasonableness of a regulation, we must weigh heavily the fact that communication is involved; the regulation must be narrowly tailored to further the State's legitimate interest . . . Free expression 'must not, in the guise of regulation, be abridged or denied.'" (citations and footnotes omitted) 408 U.S. at 116-117, 92 S.Ct. at 2303-2304. (emphasis added).

In upholding the ordinance, the Court emphasized that:

> "[the] antinoise ordinance goes no further than Tinker [v. Des Moines Independent Community School District (1969) 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731] says a municipality may go to prevent interference with its schools. It is narrowly tailored to further Rockford's compelling state interest in having an undisrupted school session conducive to the students' learning, and does not unnecessarily interfere with First Amendment rights. Far from having an impermissibly broad prophylatic ordinance, Rockford punishes only conduct which disrupts or is about to disrupt normal school activities." 408 U.S. at 119, 92 S.Ct. at 2305. (emphasis added).

Tinker v. Des Moines Independent Community School District, supra, struck down a school policy of suspending students who refused to remove armbands worn to protest the Vietnam War. The record disclosed the involved students neither interrupted school activities nor sought to intrude in school affairs or the lives of others; their expression caused discussion outside the classroom but no interference with work or disorder.

In accomodating First Amendment rights with the "special characteristics of the school environment," 393 U.S. at 506, 89 S.Ct. at 736, the United States Supreme Court recognized

12

that "'wide exposure to . . . robust exchange of ideas'" is "an important part of the educational process" and should be nurtured. 393 U.S. at 512, 89 S.Ct. at 739-740.

The Court concluded that free expression could not be barred from all parts of a school building or its immediate environs, but that expressive activity may be prohibited if it "materially disrupts classwork or involves substantial disorder or invasion of the rights of others". 393 U.S. at 513, 89 S.Ct. at 740. The Court made clear that "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression". 393 U.S. at 508, 89 S.Ct. at 737.

The District Court erred by failing to apply the incompatibility test of Grayned and by neglecting to carefully scrutinize the school district's policy in light of Grayned and Tinker. One simply cannot equate public schools with military reservations or jail enclosures and conclude that the uses to which they are dedicated cannot be preserved unless expressive activities are prohibited or substantially restricted. Grayned, 408 U.S. at 121, fn 49, 92 S.Ct. at 2306; Tinker, 393 U.S. at 512, fn 6, 89 S.Ct. at 739. Nor is it appropriate to conclude, as the school district suggests, that because expressive activities may be constitutionally prohibited in privately owned shopping centers not dedicated to public use, Lloyd Corporation, Ltd. v. Tanner (1972) 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131, appellant's activities may be excluded from public school buildings expressly dedicated to public use for education of students and elections. See, sections 13-3-105(4), 20-1-305(1), 20-6-602, MCA.

In the context of a school environment, incompatible expression must be found in substantial disruption of or

13

material interference with normal school activities, _Grayned_, 408 U.S. at 118, 92 S.Ct. at 2304; "undifferentiated fear or apprehension of disturbance is not enough to overcome the right of freedom of expression". _Tinker_, 393 U.S. at 508, 89 S.Ct. at 737. Moreover, a decision as to whether a manner of expression is incompatible, must be on an individual basis, given a particular fact situation, _Grayned_, 408 U.S. at 119, 92 S.Ct. at 2305, and not by means of broad classifications, especially those based on subject matter. _Mosley_, 408 U.S. at 101, 92 S.Ct. at 2293; see, also, Consolidated Edison Co. v. Public Service Commission (1980) 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319. Finally, to be permissible, any regulation of expressive activities must be the least restrictive means of furthering the state's interest in providing a school environment conducive to student's learning, _Grayned_, supra.

The policy prohibiting appellant's solicitation activities is not premised on any actual instances in which indoor or outdoor solicitation activities have either _substantially_ disrupted, or threatened to _substantially_ disrupt, normal school activities. From the stipulated facts, the most that can be said regarding the incompatibility of solicitation activities and school functioning is that the hallways might be noisier or more congested while solicitors converse with registered voters regarding the contents and merits of a particular initiative petition. That is not analogous to making a speech in the reading room of a library, which is how the United States Supreme Court illustrated the incompatibility test it articulated in _Grayned_. Furthermore, the record is devoid of any facts to substantiate the school districts's security concern.

14

Finally the school district's policy is not narrowly tailored to further its interests in undisrupted school functioning. Less restrictive means of achieving the objective were not tried.

Unlike the ordinance upheld in Grayned, the school district's policy applies throughout the day, irrespective of whether or not classes are in session, and reaches all solicitors, irrespective of whether or not they conduct their activities peaceably. Like the ordinance struck down by Mosley, the school district's policy selectively excludes solicitation on the basis of subject matter and undifferentiated fear of disruption.

In its present form the school district's policy unnecessarily infringes on the First Amendment liberties of appellant and the class he represents. Therefore, the District Court's order is reversed and the school district's policy is hereby declared to be unconstitutional.

Justice

We concur:

_____
Chief Justice

_____
Justices

15

Mr. Justice Fred J. Weber concurs and dissents as follows:

I agree with the holding of the majority that in its present form the school district's policy unnecessarily infringes on the First Amendment liberties of the appellant and the class he represents and is therefore unconstitutional. I am also in agreement with the general principles of law set forth in the majority opinion upon which the conclusion was reached.

However, I disagree with the majority's conclusion that the policy prohibiting solicitation is not premised on any actual instances in which solicitation activities have substantially disrupted or threatened to substantially disrupt normal school activities. Paragraph 21 of the facts stipulated to by all parties states in pertinent part:

> "21. Exercising the right to vote does not require conversation, except for purposes of confirming registration and signing the precinct register. The solicitation of petition signatures requires conversation between solicitors and solicitees, to explain the proposal, request signatures, and discuss the issues. The process of collecting signatures includes not only the request to sign, but also the attempt to persuade to sign. In fact, arguments between voters and solicitors have occurred, sometimes precipated by voters and sometimes precipitated by solicitors. Noise in the hallways distracts the students, impairs their concentration, lowers their level of functioning, and affects classroom discipline and teaching effectiveness. Under present School District policy, the noise and arguments occur outside school buildings. If solicitation were permitted inside school buildings, any such arguments would occur inside." (Emphasis added)

These stipulated facts establish something significantly greater than an "undifferentiated fear of disruption." In view of these stipulated and agreed facts, it is reasonable to conclude that the school district properly could apply its policies to those periods of time when classes are in session and students would be adversely affected. I would therefore

16

approve such a policy which is properly limited in time and place in order to protect undisrupted school functioning. Such a limited or restricted policy would clearly meet the test of Grayned, in which the United States Supreme Court approved an anti-noise ordinance directed at the "making of any noise or diversion which disturbs or tends to disturb the peace or good order of such school session or class thereof . . ." Sufficient facts have been established in this case to warrant a policy of the type adopted by the school board. Simply stated, the present policy is too broad.

My purpose is to emphasize that a policy of this type may be adopted if it is properly limited in the manner described in the majority opinion.

_____
Justice

Mr. Chief Justice Frank I. Haswell:

I concur in the foregoing separate opinion of Mr. Justice Fred J. Weber.

_____
Chief Justice