No. 87-298

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

FALLON COUNTY, et al.,

     Plaintiffs and Appellants,

-vs-,

STATE OF MONTANA, et al.,

     Defendants and Respondents.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Daniel L. Schwarz; Schwarz and Schwarz, Broadus, Montana

    For Respondents:

        R. Bruce McGinnis, Department of Revenue, Helena, Montana
David W. Woodgerd, Argued

Submitted: April 4, 1988

Decided: April 27, 1988

Filed:    **APR 2 7 1988**

_Ethel M. Harrison_

——————————————————————
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.


In 1985, the state legislature, through its General Appropropriation Bill (H.B. 500), provided state funding for the salaries of county assessors for fiscal year 1987 at the level of 70%. The remaining 30% was to be paid by the several counties. In 1987, the state legislature continued the apportionment of the county assessors' salaries between the state and the several counties for this biennium but reduced the state participation to 66%, with the several counties to pick up the remaining 34%.

Fallon County, 19 other counties, and one county assessor brought suit in the District Court, First Judicial District, Lewis and Clark County against the State of Montana, acting through the Governor and the Department of Revenue, challenging the apportionment between the state and counties of the salaries of the county assessors. After a hearing, and receipt of briefs, the District Court issued an order granting summary judgment in favor of the state and entered judgment thereon on June 17, 1987, dismissing Fallon County's action on the merits, and holding that the provisions of H.B. 500 which funded only 70% of the salaries for county assessors does not violate Art. VIII, § 3 of the 1972 Montana Constitution. Fallon County has appealed the District Court decision to this Court and on consideration, we affirm.

The section in issue is in Art. VIII, of the state constitution. It provides in pertinent part:

> Section 3. Property tax administration. The state shall appraise, assess, and equalize the valuation of all property which is to be taxed in the manner provided by law.

Prior to the 1972 Montana Constitution, the assessment and valuation of property for tax purposes was determined at a county level, subject to review by the former State Board of Equalization. During the Constitutional Convention of 1972, it was contended that the county system had inadequately equalized property values statewide. It was contended during the Convention that the then recent case of Serrano v. Priest (Cal. 1971), 487 P.2d 1241, mandated a change in Montana's assessment, valuation and equalization system to avoid equal protection attacks on the method of state funding for elementary education. The ultimate result was the adoption of Art. VIII, § 3 above quoted.

Following the adoption of the 1972 State Constitution, the legislature, to implement the new assessment system, provided that all county assessors became agents of the Department of Revenue (DOR), and they remain state agents presently. Section 15-8-102, MCA. County assessors were omitted from the list of county officers (§ 25-605, R.C.M. (1947)), but subsequently regained county officer status in 1977. Section 7-4-2203(1)(i), MCA.

Beginning in 1973, all county assessors' salaries were paid from state funds through the DOR. In 1985, the legislature changed this pay structure through H.B. 500 which provided for state payment of 70% of the county assessors' salaries applying to fiscal year 1987. The 1987 legislature has continued the apportionment of such salaries in this biennium by funding an amount sufficient to pay 66% of county assessors' salaries. The remainder is to be supplied by the several counties.

In the District Court and on appeal, Fallon County and its co-plaintiffs argue that Art. VIII, § 3 grants a right to the people to have their property assessed by the State of Montana and to have the state remain solely accountable for

such assessments; that the designation of assessors as "county officials" is not sufficient to change the constitutional duty of the state to assess property and to pay for the personnel employed for that purpose; that the assessment of taxes is a duty placed on the state regardless of the form of government at the county level chosen by the people, and that though assessors may perform duties in addition to those provided for in the constitution relating to assessment, the elemental accountability for assessors lies with the DOR. Additionally, Fallon County argues that the apportionment of such salaries, because of the mills limitation applicable to levies by counties, has the effect of using up county funds that would otherwise be available for other county activities. Some of these issues are raised by Fallon County because the District Court, in its order granting summary judgment in this matter held that the office of elected county assessor is a county office, that it is a permissive office, and that the assessor has some duties which are in addition to those required relating to assessment.

When a legislative course of action expressed in statutes or budgetary laws is tested for constitutionality under the State Constitution, our review is circumscribed by certain principles. We must give the state constitutional provision a broad and liberal construction consistent with the intent of the people adopting it to serve the needs of a growing state. State ex rel. Fenner v. Keating (1917), 53 Mont. 371, 163 P. 1156. The constitutional provision should receive a reasonable and practical interpretation in accord with common sense. Cottingham v. State Board of Examiners (1958), 134 Mont. 1, 17, 328 P.2d 907, 912. The constitutionality of a legislative enactment is prima facie presumed, and every intendment in its favor will be presumed,

unless its unconstitutionality appears beyond a reasonable doubt. State ex rel. Mills v. Dixon (1923), 66 Mont. 76, 84, 213 P. 227, 229. The question of constitutionality is not whether it is possible to condemn, but whether it is possible to uphold the legislative action which will not be declared invalid unless it conflicts with the constitution, in the judgment of the court, beyond a reasonable doubt. Matter of the Estate of Kujath (1976), 169 Mont. 128, 545 P.2d 662; see also Board of Regents v. Judge (1975), 168 Mont. 433, 543 P.2d 1323; Arps v. State Highway Commission (1931), 90 Mont. 152, 300 P. 549.

We held in Board of Regents v. Judge, supra, that under the state constitution, the legislative appropriative power extends to all public operating funds of state government. The constitutional limit over that power is that appropriations by the legislature shall not exceed anticipated revenue. Art. VIII, § 9.

The duties of the county assessor vis-a-vis the Department of Revenue are these:

> (1) The county assessors of the various counties of the state are agents of the department of revenue for the purpose of locating and providing the department a description of all taxable property within the county, together with other pertinent information, and for the purpose of performing such other administrative duties as are required for placing taxable property on the assessment roles. The assessors shall perform such other duties as are required by law, not in conflict with the provisions of this subsection.

Section 15-8-102, MCA.

The office of county assessor is a permissive office, and may be elected or appointed. Section 7-4-2203, MCA. The Board of County Commissioners has the power and discretion to consolidate the office of county assessor with one or more other county officers. Section 7-4-2301, MCA. While a

assessor is an agent of the state, nevertheless, under §
7-4-2110(1), MCA, the Board of County Commissioners has the
jurisdictional power to "supervise the official conduct of
all county officers charged with assessing, collecting,
safekeeping, management or disbursement of the public
revenues."

Irrespective of the contentions of Fallon County, the
dispositive question is whether the imposition by the
constitution on the state of the duty to appraise, assess and
equalize property valuations mandates that the state should
fully fund the county assessors' salaries. The
constitutional provision itself is silent on that point. It
is apparent that Art. VIII, § 3 was adopted with a conscious
choice of leaving the method of implementing the state's
duties to the legislature. Even though § 15-8-101, MCA,
requires the Department of Revenue to "secure such personnel
as is necessary to properly perform its duties" that section
does not dictate, when read with other statutes pertaining to
the county assessor that the state should completely fund
county assessor salaries. Art. VIII, § 3 gives the
legislature wide flexibility to implement the assessment,
appraisal and valuation of property for tax purposes. Fallon
County's claim that the legislative apportionment of salaries
conflicts with the Constitution is very far from approaching
invalidity beyond a reasonable doubt. Matter of the Estate
of Kujath, supra.

Finally, Fallon County in making its "common sense"
argument, Cottingham v. State Board of Examiners, supra,
contends that it is unfair for the state, which controls the
assessment of property to require counties to shoulder part
of the expense of the assessors. That issue is political,
not constitutional, and must be addressed to the legislature
itself. When the legislature acts within its constitutional

- 6 -

power, courts are unable to contravene such power on any court-presumed grounds of fairness, absent equal protection consequences.

Accordingly, we affirm the decision of the District Court.

_John L. Sheehy_
Justice

We Concur:

_L. A. Turnage_
Chief Justice

_John Conway Harrison_

_Justices_

_Frank I. Haswell_
Frank I. Haswell, Retired
Chief Justice, sitting for
Justice R. C. McDonough.