No. 90-264

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

CITY OF BILLINGS,

      Plaintiff and Respondent,

  v.

JIMMY LEE LAEDEKE,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Robert L. Stephens, Stephens Law Firm, Billings,
Montana

      For Respondent:

          Russell C. Fagg, City Attorney, Billings, Montana

          Hon. Marc Racicot, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

FILED

FEB -5 1991

Filed: *Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted:  January 18, 1991

Decided:  February 5, 1991

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Jimmy Lee Laedeke appeals an order of the Thirteenth Judicial District, Yellowstone County, which upheld the constitutionality of §§ 3-304(d) and (e), Billings, Montana City Code (BMCC), an ordinance banning certain forms of nude and semi-nude dancing. The District Court upheld the constitutionality and found Laedeke guilty of violating the ordinance. We affirm.

Laedeke raises the following issues:

1. Did the District Court err in finding that the City of Billings had authority to adopt regulatory ordinances for state-licensed retail liquor premises?

2. Did the District Court err in concluding that the municipal ordinance did not violate state and federal constitutional provisions relating to freedom of speech, freedom of expression, equal protection, due process, and vagueness and over-breadth?


## FACTS AND PROCEDURE

In 1987, Jimmy Lee Laedeke worked as a male revue dancer at the Club Carlin, d/b/a Big Daddy's, an establishment licensed by the state to sell alcoholic beverages, in Billings, Montana. As a male revue dancer, Laedeke entertained the Club Carlin patrons by performing burlesque-type dance routines to music. Laedeke designed his own dance costumes, which consisted of various layers of clothing that he would progressively remove as his dance routines unfolded.

2

Laedeke began one of his dance routines dressed in a raincoat. Underneath his raincoat, Laedeke wore a bikini brief, equivalent to a speedo swimsuit, which was embellished with portrayals of Groucho Marx's nose, mustache and glasses on the front portion of the bikini. Underneath his "Groucho" bikini, Laedeke wore two overlapping G-strings. A G-string, designed for a male, is a garment consisting of a pouch that covers the genital area with a narrow string attached to the pouch which runs up the buttocks and attaches to a narrow belt worn around the waist. Laedeke's top G-string was of slightly larger proportions than the bottom G-string. The arresting police officer testified that the smaller G-string's pouch barely covered Laedeke's genital area and its string was approximately one-eight inch wide. Laedeke would complete his routine by wearing only the smaller G-string.

On the evening of November 6, 1987, the arresting police officer observed Laedeke while he was performing this particular dance routine. After viewing Laedeke's performance, the police officer left the Club Carlin to review relevant ordinances in connection to this performance. The police officer returned approximately one-half hour later and cited Laedeke with a violation of § 3-304, BMCC, which prohibits certain forms of nude and semi-nude dancing while Laedeke was again performing the same routine. Additionally, the arresting officer cited four other female performers that night, as well as the manager of the Club Carlin, for violating § 3-304, BMCC, and in one instance, § 3-301,

3

BMCC, which requires live entertainment to remain on a platform or within an exclusive area while performing.

Legal proceedings originated in the City Court of Billings. On December 17, 1987, Laedeke and five co-defendants moved to dismiss the case based on the unconstitutionality of §§ 3-301 and -304, BMCC. On February 8, 1988, the defendants were found guilty of violating §3-304, BMCC, and in one instance, § 3-301, BMCC.

The defendants appealed to District Court. On October 6, 1988, Laedeke consented to the withdrawal of Richard Stephens as his attorney and expressed his interest to represent himself pro se. On October 20, 1988, the District Court, by stipulation, dismissed with prejudice the appeal of the remaining defendants and ordered their respective bonds of $150.00 forfeited. Laedeke, however, continued his case, asserting the unconstitutionality of § 3-304, BMCC.

Following a trial on January 11, 1990, the District Court found that the City of Billings had the authority to enact § 3-304, BMCC, and that this ordinance was constitutional; the court also found Laedeke guilty of violating the ordinance, fined him $130.00, and assessed him a $20.00 court surcharge. From this decision, Laedeke further appeals.

## STANDARD OF REVIEW

A "legislative enactment" is presumed to be constitutional and will be upheld on review except when proven to be unconstitu-

4

tional beyond a reasonable doubt. Fallon County v. State (1988), 231 Mont. 443, 445-46, 753 P.2d 338, 339-40 (citations omitted).

## ANALYSIS

1. Did the District Court err in finding that the City of Billings had authority to adopt regulatory ordinances for state-licensed retail liquor premises?

Laedeke argues that §§ 3-304(d) and (e), BMCC, are unconstitutional based on state preemption of regulation of establishments state-licensed to sell alcoholic beverages under the Montana Alcoholic Beverage Code, §§ 16-1-101 to 16-6-314, MCA. We disagree.

The pertinent language of the Montana Alcoholic Beverage Code, found under §§ 16-1-101(2) and -104, MCA, provides:

> It is hereby declared to be the policy of the state of Montana to effectuate and ensure the entire control of the manufacture, sale, and distribution of alcoholic beverages within the state of Montana, as that term is defined in this code, subject to the authority of the state of Montana through the Montana department of revenue.
>
> The purpose and intent of this code are to prohibit transactions in alcoholic beverages which take place wholly within the state of Montana except under state control as specifically provided by this code, and every section and provision of this code shall be construed accordingly.

Sections 3-304(d) and (e), BMCC, provide:

> (d) Any owner, proprietor or person in charge of an establishment in which alcoholic bever-

5

ages are sold or dispensed, who knowingly permits any person to appear clothed, costumed, unclothed, or uncostumed in such a manner that the lower part of his/her torso, consisting of the private parts, or genitalia, or anal cleft, or cleavage of the buttocks, is not covered by a fully opaque material, or is so thinly covered as to appear uncovered, is guilty of a misdemeanor.

(e) Any person who intentionally appears with private parts uncovered in an establishment as in subsection (d), whether employed by the establishment or not, is guilty of a misdemeanor.

The Montana Alcoholic Beverage Code grants the Department of Revenue Liquor Division the authority to regulate the "<u>manufacture</u>, <u>sale</u>, and <u>distribution</u> of alcoholic beverages." (Emphasis added.) The Code, however, does not grant the Department the authority to regulate the <u>conduct</u> that may occur in establishments state-licensed to sell alcoholic beverages.

Here, Laedeke's place of employment, the Club Carlin, was a Billings establishment state-licensed to sell alcoholic beverages to its patrons. Accordingly, the Montana Alcoholic Beverage Code applies to the regulation of the sale of alcoholic beverages within the Club Carlin. Sections 3-304(d) and (e), BMCC, are ordinances banning certain forms of topless and bottomless dancing which may occur in Billings establishments state-licensed to sell alcoholic beverages. Clearly, these ordinances in no way regulated the Club Carlin's sale of alcoholic beverages to its patrons, but instead, regulated Laedeke's conduct that occurred in the Club Carlin. This is simply not a "liquor-sale" case as found in State

ex rel. City of Libby v. Haswell (1966), 147 Mont. 492, 414 P.2d 652, where we held that a city ordinance which granted a police court jurisdiction over the offense of selling beer to a minor under twenty-one years of age was invalid and preempted by the state. We therefore hold that the City of Billings had the authority to enact §§ 3-304(d) and (e), BMCC, as the City of Billings was not preempted by the Montana Alcoholic Beverage Code to regulate conduct which may occur in state-licensed liquor establishments.

2. Did the District Court err in concluding that the municipal ordinance did not violate federal and state constitutional provisions relating to freedom of speech, freedom of expression, equal protection, due process, and vagueness and over-breadth?

Laedeke argues that restricting burlesque-type dancing is a violation of the First Amendment of the United States Constitution, as well as Article 2, § 7 of the Montana Constitution, which states that "[n]o law shall be passed impairing the freedom of speech or expression." Laedeke asserts that nude dancing, as a visual representation, is a form of protected expression if it is not found to be obscene citing 41 Op. Att'y Gen. 75 (1986), and here, uncontroverted evidence establishes that burlesque-type dancing featured at the Club Carlin was viewed by the performers as a form of artistic self-expression. Furthermore, Laedeke argues that no

7

evidence exists in the record to establish that Laedeke's performance was obscene.

Laedeke additionally argues that the ordinance offends the principles of equal protection and due process in both the federal and state constitutions. Laedeke further argues that the ordinance is vague and overly-broad. Laedeke, however, failed to adequately brief the arguments of equal protection, due process, vagueness, and over-breadth in his brief to this Court, and, as such, this Court will not further address these arguments. We will therefore limit our discussion to whether 1) the ordinance violated the First Amendment of the United States Constitution, and 2) whether Article 2, § 7 of the Montana Constitution provides greater protection for individual expressive activity than the First Amendment of the United States Constitution.

Laedeke's constitutional argument based on a First Amendment violation lacks merit in light of a series of three United States Supreme Court cases. Those cases clearly establish that an ordinance regulating nude and semi-nude dancing is constitutional under the broad language of the Twenty-first Amendment of the United States Constitution, which grants the states the power to regulate the sale of liquor. In City of Newport v. Iacobucci (1986), 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334, the Court upheld a Kentucky municipal ordinance, quite similar to the Billings ordinance in question, which banned certain forms of nude and semi-nude dancing in bars. The Court stated that the sweeping

language of the Twenty-first Amendment confers to states the authority to ban nude and semi-nude dancing in establishments state-licensed to sell liquor "'as a part of its liquor license control program.'" Iacobucci, 479 U.S. at 95 (citation omitted). Additionally, the Court held that states may delegate this authority "as they see fit." Iacobucci, 479 U.S. at 96. The Court in Iacobucci cited New York State Liquor Authority v. Bellanca (1981), 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357, where the Court upheld a state statute banning nude dancing in bars. In Bellanca, the Court held that the state's interest of upholding order outweighed the interest of free expression under the First Amendment. Bellanca, 452 U.S. at 716-17. The Court in Iacobucci and Bellanca cited California v. LaRue (1972), 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342, as authority, which upheld a state regulation banning nude dancing in bars holding that the Twenty-first Amendment confers broad powers "over public health, welfare, and morals." LaRue, 409 U.S. at 114.

Therefore, a municipality may enact an ordinance regulating nude and semi-nude dancing if the state has delegated its regulatory authority under the Twenty-first Amendment to the municipality. Here, the City of Billings is a municipality with self-government powers. In Montana, a municipality with self-government powers "may exercise any power not prohibited by this constitution, law, or charter." Mont. Const. Art. XI, § 6. A Montana municipality with self-government powers is not expressly prohibited from

9

regulating nude and semi-nude dancing in establishments state-licensed to sell liquor. Therefore, the City of Billings, a municipality with self-government powers, may enact an ordinance that regulates nude and semi-nude dancing under the broad regulatory powers of the Twenty-first Amendment.

Laedeke further argues that Article II, § 7 of the Montana Constitution, the "freedom of speech or expression" clause, provides greater protection for individual expressive activity than the First Amendment's "freedom of speech" clause of the United States Constitution. In the past, this Court has discussed the First Amendment and its state counterpart without distinguishing between the two provisions. See Dorn v. Board of Trustees of Billings School District #2 (1983), 203 Mont. 136, 144-45, 661 P.2d 426, 430-31. Several state courts, however, have developed state constitutional protections which limit state authority over nude entertainment apart from the Twenty-first Amendment. Some of these courts have held that the state's police power, though possibly not limited under the United States Constitution, is limited by the state constitution's free expression protections. See Mickens v. City of Kodiak (Alaska 1982), 640 P.2d 818, 821; Bellanca v. New York State Liquor Authority (N.Y. 1981), 429 N.E.2d 765, 766; Harris v. Entertainment Sys. Inc. (Ga. 1989), 386 S.E.2d 140, 142.

We, however, concur with the Florida Supreme Court's analysis in City of Daytona Beach v. Del Percio (Fla. 1985), 476 So.2d 197,

10

203-04, where, in upholding a municipal ordinance banning certain forms of nude and semi-nude dancing, the court stated:

> Assuming that Florida's constitutional protection of nude barroom dancing is coextensive with the federal protections (and we are not inclined to find a greater state protection in this instance), a municipality's inherent police power, exercised for the public health and welfare, may outweigh the minimal speech protection at stake here. "The regulation of activity which has demonstrated a capacity to induce breaches of the peace is a traditional and legitimate subject for the exercise of a municipality's police power." [citations omitted.] . . . While some may question the wisdom of regulating crime such as this, which said detractors might term victimless, the decision lies with the legislative body, not the courts.

Here, we are also inclined not to find a greater state protection of nude and semi-nude dancing in establishments state-licensed to sell alcoholic beverages than what is afforded by the United States Constitution. Accordingly, we hold that the municipal ordinance in question is constitutionally sound under the Montana Constitution.

Affirmed.

J. A. Turnage
Chief Justice

11

We concur:

_John Conway Harrison_

_P.C. McDonough_

_Diane G. Barz_

_John C. Sheehy_

_____

_Fred J. Weber_
Justices

12

Justice William E. Hunt, Sr., dissenting:

I dissent.  There are many ways to express an opinion.  Some people wrap themselves in the flag.  Others burn it.  But the majority of us silently regard it as an emblem of the freedom to express ourselves as we see fit.  In dancing, there are many ways to express oneself, ways that the rest of us do not always regard as "our way."  Some put on a pair of tights and perform classical ballet.  Others attire themselves in fancy dress and promenade on a ballroom floor.  Jimmy Lee Laedeke dons a Groucho Marx bikini and two G-strings and prances before the patrons of The Club Carlin.

The Majority has danced the wild fandango in its zeal to ensure that Laedeke's routine shall never again see the footlights of Billings.  First, it holds that the City is not preempted by state liquor-control law from enacting an ordinance forbidding nude and semi-nude dancing in establishments that serve alcohol because the ordinance restrains conduct rather than the manufacture, sale and distribution of alcohol.  In the next breath, it holds that the ordinance is constitutional under the Twenty-First Amendment because it is part of a liquor-control program.

The City cannot have it both ways.  Either the ordinance was enacted as a part of a liquor-control program or it wasn't.  If it was part of a liquor-licensing scheme, the City could not enact the ordinance because the area of alcohol sales has been affirmatively subjected to state control.  If it wasn't part of a liquor-control program, and instead was enacted solely to regulate

13

conduct, the ordinance does not fit under the broad base of power granted to the states under the Twenty-First Amendment.

A state's authority to regulate conduct under the Twenty-First Amendment is inextricably coupled with its authority to regulate the sale of alcohol. The amendment grants the State the ability to proscribe conduct because "[t]he [s]tate's power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where topless dancing occurs." New York State Liquor Auth. v. Bellanca, 452 U.S. 714, 717, 101 S.Ct. 2599, 2601, 69 L.Ed.2d 357, 361 (1981). Strip away the alcohol sales, as the Majority does in the first part of the Opinion, and you have an ordinance that no longer fits under the lesser protection of the Twenty-First Amendment. The ordinance instead becomes a conduct-restricting regulation subject to the greater degree of scrutiny given to all laws implicating the First Amendment.

Thus, once the Majority determined that the City's ordinance was not preempted by the State because it regulated conduct rather than alcohol sales, it was required to review the constitutionality of the law under the standards pertaining to regulations that, on their face, restrict conduct for its communicative element. As Justice Marshall pointed out in his dissent to California v. LaRue, 409 U.S. 109, 131, 138, 93 S.Ct. 390, 403, 407, 34 L.Ed.2d 342, 359, 363 (1972), a case concerning California laws banning sexual conduct in bars and night clubs:

> [I]n order to restrict speech, the State must show that the speech is "used in such circumstances and [is] of

14

such a nature as to create a clear and present danger that [it] will bring about the substantive evils that [the State] has a right to prevent." (Citations omitted.)

. . .

Classifications that discriminate against the exercise of constitutional rights per se . . . must be supported by a "compelling" governmental purpose and must be carefully examined to insure that the purpose is unrelated to mere hostility to the right being asserted.

The ordinance could not pass scrutiny under this test because, as the City acknowledged in its brief, it has failed to make a showing of <u>any</u> governmental interest furthered by the law.

What I find most disturbing about the Majority's thinly veiled attempt to uphold this ordinance at any price is its failure to take this opportunity to put some teeth into our state constitutional guarantee of freedom of expression. 1972 Mont. Const. Art. II, § 7. In voting unanimously to include a specific provision for the freedom of expression in the Montana Constitution, the Bill of Rights Committee stated:

Hopefully, this extension [of freedom of expression] will provide impetus to the courts in Montana to rule on various forms of expression similar to the spoken word and the ways in which one expresses his unique personality <u>in an effort to re-balance the general backseat status of states in the safeguarding of civil liberties. The committee wishes to stress the primacy of these guarantees in the hope that their enforcement will not continue merely in the wake of the federal case law</u>. (Emphasis added.)

Bill of Rights Committee Proposal, II Mont. Const. Convention 630 (Feb. 23, 1972).

Although the committee expressed the hope that the Montana Constitution's freedom of expression would give broader guarantees than the U.S. Supreme Court had accorded the right, this Court has

refused to listen to this desire. Instead, the Majority today bestows lesser protection to the freedom of expression than that accorded by the federal court. The Majority has not required the City to demonstrate any governmental interest forwarded by this ordinance. Instead, it has placed the burden of proving unconstitutionality on Laedeke. And the standard the majority has demanded that he use, that of a reasonable doubt, is the most stringent standard of all. What a sad day it is when we allow a law that on its face constricts so fundamental a right to pass muster under the lowest possible scrutiny available.

The fact that Laedeke dances to a different choreographer should not be a reason to deny him, and inferentially all of us, the basic constitutional right to express our feelings whether they are about the flag, dancing or Groucho Marx.

I would reverse.

William E. Hunt Sr.
_____
                    Justice

16