653 So.2d 1158 (1995)
STATE of Louisiana
v.
Blaine LARSON.
No. 94-KA-1237.
Supreme Court of Louisiana.
April 10, 1995.
*1160 John E. Di Giulio, Baton Rouge, for applicant.
Richard P. Ieyoub, Atty. Gen., Bernard E. Boudreaux, Dist. Atty., Walter J. Senette, Jr., Franklin, for respondent.
LINDSAY, Justice Pro Tem.[1]
This is a direct appeal under La. Const. Art. V, Sec. 5(D) from a trial court judgment holding unconstitutional provisions of the Alcoholic Beverage Control Law, LSA-R.S. 26:90(A)(13) and (D)(3), which prohibit lewd dancing on licensed premises. For the following reasons, we find the statutory provisions at issue to be constitutional and, accordingly, reverse the judgment of the trial court.

Facts
On March 17, 1993, officers of the Terrebonne and St. Mary Parish narcotics units conducted an undercover investigation into narcotics, nude dancing, and B-drinking violations at the Foxy Lady Lounge in Morgan City, Louisiana. While inside the lounge, the officers observed dancers repeatedly exposing their vaginas, anuses, breasts, and nipples. Then, on May 20 and 21, 1993, an officer of the Morgan City Police Department was joined by two agents of the Alcoholic Beverage Control Board, who again observed dancers at the Foxy Lady Lounge engaging in the identical conduct. The defendant, Blaine Larson, is the lessee of the premises upon which he operates the Foxy Lady Lounge, and was for 1993 the holder of a Class A Retail Beer and Liquor permit.
On June 22, 1993, the defendant was arrested. He was released on bail the next day. On September 23, 1993, the defendant was formally charged in a bill of information with three counts of Letting Prohibited Acts on Premises, LSA-R.S. 26:90(A)(13) and (D)(3).[2] These provisions of the Louisiana Revised Statutes are found in the chapter pertaining to permits under the Alcoholic Beverage Control Law.
The defendant filed a Motion to Dismiss, asserting that LSA-R.S. 26:90(A)(13) and (D)(3) fail to set forth a scienter requirement. He contends that this missing element permitted a prosecution without a showing of criminal intent or culpable knowledge and thereby failed to give the defendant fair notice of the prohibited criminal conduct.
On March 25, 1994, the trial judge granted the defense motion, stating:
[T]he Court is satisfied that as presently constituted Title 26 Section 90 of the Louisiana Revised Statutes, insofar as ... it's presently structured it violates constitutional principles in that fairness requires that the matter be set out with some specificity that the conduct must be intentional or knowingly intentional to pass constitutional muster. For that reason we do find that Title 26 Section 90 as affects this particular case, that portion of it anyway, is unconstitutional.[3]
The pertinent parts of LSA-R.S. 26:90 provide as follows:
A. No person holding a retail dealer's permit and no agent, associate, employee, representative, or servant of any such person shall do or permit any of the following acts to be done on or about the licensed premises:
. . . .
(13) Permit any disturbance of the peace or obscenity, or any lewd, immoral, or improper entertainment, conduct, or practices on the licensed premises.
. . . .

*1161 B. The following acts or conduct on licensed premises are deemed to constitute lewd, immoral, or improper entertainment as prohibited by this Section and therefore no on-sale permit for beverages of high alcoholic content shall be held at any premises where such conduct or acts are permitted:
(1) Employment or use of any person in the sale or service of alcoholic beverages in or upon the licensed premises while such person is unclothed or in such attire, costume, or clothing as to expose to view any portion of the female breast below the top of the areola or of any portion of the pubic hair, anus, cleft of the buttocks, vulva, or genitals.
(2) Employment or use of the services of any hostess or other person to mingle with the patrons while such hostess or other person is unclothed or in such attire, costume, or clothing as described in Paragraph (1) of this Subsection.
(3) Encouraging or permitting any person on the licensed premises to touch, caress or fondle the breasts, buttocks, anus, or genitals of any other person.
(4) Permitting any employee or person to wear or use any device or covering, exposed to view, which simulates the breast, genitals, anus, pubic hair, or any portion thereof.
C. Acts or conduct on licensed premises in violation of this Section are deemed to constitute lewd, immoral or improper entertainment as prohibited by this Section and therefore no on-sale permit for beverages of high alcoholic content shall be held at any premises where such conduct and acts are permitted.
D. Live entertainment is permitted on any licensed premises, except that no permittee shall permit any person to perform acts of or acts which simulate:
. . . .
(3) The displaying of the pubic hair, anus, vulva, genitals, or nipple of the female breast.
. . . .
I. Violation of this Section is punishable as provided in R.S. 26:171 and is also sufficient cause for the suspension or revocation of a permit.
The penalty provision in LSA-R.S. 26:171 classifies the offense as a misdemeanor:
Whoever violates any provision of this Chapter or any rule or regulation of the commissioner, where no other penalty is provided for in this Chapter, shall be fined not less than one hundred dollars nor more than five hundred dollars or imprisoned for not less than thirty days nor more than six months, or both.

Lack of Scienter
The defendant first maintains that LSA-R.S. 26:90(A)(13) and (D)(3) fail to require scienter or any form of criminal intent on the part of the person operating an establishment with an alcoholic beverage permit. Specifically, the defendant argues that the applicable provisions of LSA-R.S. 26:90 "fail to distinguish between owners of bars who are aware of the obscene conduct and owners of bars who are unaware of obscene conduct." The state replies that although there is a general rule that criminal statutes should contain a mens rea element, LSA-R.S. 26:90 is a public welfare, regulatory statute which does not require intent or knowledge to complete the offense.
This court has recognized that the existence of mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence. Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951); State v. Brown, 389 So.2d 48 (La.1980). In support of this general principle, the United States Supreme Court has observed:
The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act ... has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance *1162 as the motivation for public prosecution. Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a "vicious will."
Morissette v. United States, 342 U.S. 246, 250-251, 72 S.Ct. 240, 243-44, 96 L.Ed. 288 (1952).
While "strict liability" offenses are not favored, the Supreme Court has noted that Congress can dispense with the requirement of mens rea. Liparota v. United States, 471 U.S. 419, 424-25, 105 S.Ct. 2084, 2087-88, 85 L.Ed.2d 434 (1985). Furthermore, "[t]he [state] legislatures have always been allowed wide freedom to determine the extent to which moral culpability should be a prerequisite to conviction of a crime." Powell v. Texas, 392 U.S. 514, 545, 88 S.Ct. 2145, 2160, 20 L.Ed.2d 1254, 1274 (1968) (Black, J., concurring).
Under Louisiana law, not all statutes require scienter to be valid, nor is it necessary that knowledge be proven, for intent is not an element of every criminal offense. State v. Humphrey, 412 So.2d 507, 512 n. 3 (La.1981); State v. Terrell, 352 So.2d 220, 221 (La.1977).
LSA-R.S. 14:8(2) provides that criminal conduct may consist of a "mere act or failure to act that produces criminal consequences, where there is no requirement of criminal intent...." Furthermore, LSA-R.S. 14:11 provides that in some crimes "no intent is required." Thus, intent is not a necessary element of every crime. Usually, a statute contains wording that specifies the requisite intent. However, LSA-R.S. 26:90(A)(13) and (D)(3) contain no language stating whether scienter is required.
As the United States Supreme Court noted in Morissette, supra, there is no bright line test to determine which crimes require a mental element and those that do not. 342 U.S. at 259-61, 72 S.Ct. at 248. However, there is one type of crime recognized by the courts which has been traditionally exempt from the mens rea requirement, the public welfare or regulatory offense. Id. at 251-54, 72 S.Ct. at 244-45. Such public welfare offenses have been recognized by the Supreme Court in limited circumstances. United States v. United States Gypsum Company, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). The Supreme Court has noted that one category of public welfare offense is the illegal sale of intoxicating liquors, although it did not discuss this category in depth. Morissette, 342 U.S. at 262 n. 20, 72 S.Ct. at 249 n. 20 (citations omitted). In addition, the criminal penalties which attach to public welfare offenses are usually in the misdemeanor category because they are employed as the means of regulation. Morissette, 342 U.S. at 255-57, 72 S.Ct. at 246; United States v. Dotterweich, 320 U.S. 277, 279-81, 64 S.Ct. 134, 136, 88 L.Ed. 48 (1943).
With public welfare offenses, a mens rea requirement is not needed to ensure fair notice. As long as an accused is aware that he is in possession of or is dealing with the regulated item he "must be presumed to be aware of the regulation," United States v. International Minerals & Chemical Corp., 402 U.S. 558, 565, 91 S.Ct. 1697, 1701-02, 29 L.Ed.2d 178 (1971), and must "ascertain at his peril whether [his conduct] comes within the inhibition of the statute." United States v. Balint, 258 U.S. 250, 254, 42 S.Ct. 301, 303, 66 L.Ed. 604 (1922). Thus, the Court relies on "the nature of the statute and the particular character of the items regulated" to determine whether conventional mens rea requirements have been eliminated. Staples v. United States, 511 U.S. ___, ___, 114 S.Ct. 1793, 1798, 128 L.Ed.2d 608 (1994).
As part of the Alcoholic Beverage Control Law, LSA-R.S. 26:90 is a public welfare offense for which scienter is not required. First, alcohol is an inherently dangerous substance which produces a number of harmful secondary effects such as alcoholism and drunk driving. In addition, barrooms and exotic dancing establishments have the propensity to beget "undesirable behavior." The state has a great interest in the regulation of alcoholic beveragesand the establishments in which they are soldto prevent adverse effects on public health, welfare, and morals. See New York State Liquor Authority v. Bellanca, 452 U.S. 714, *1163 717-18, 101 S.Ct. 2599, 2601-02, 69 L.Ed.2d 357 (1981).
Second, the Supreme Court contemplates that the illegal sale and consumption of alcohol is a matter to be treated as a public welfare or regulatory offense. Morissette, 342 U.S. at 262 n. 20, 72 S.Ct. at 249 n. 20 (citations omitted). In any event, the sale and consumption of alcohol is subject to a complex regulatory scheme. See, La.Revised Statutes, Title 26, LiquorsAlcoholic Beverages.
Third, a violation of LSA-R.S. 26:90 is a misdemeanor, while the similar obscenity offense of appearing nude in a public place under LSA-R.S. 14:106(A)(1) is a felony. The relative harshness of the penalty provided by the statute has an important bearing on the distinction between public welfare offenses and other crimes which require proof of mens rea. In Staples, supra, the Supreme Court acknowledged, but did not endorse, the view of commentators collecting early cases that "offenses punishable by imprisonment cannot be understood to be public welfare offenses, but must require mens rea." Id., 511 U.S. at ___, 114 S.Ct. at 1803 (citations omitted). The Supreme Court would not go that far, but it drew the line at felony offenses. Without adopting "a definitive rule of construction," and while acknowledging that in the Balint case it had upheld the felony penalties of the Narcotics Act under a public welfare offense rationale, the Court noted that "absent a clear statement from Congress that mens rea is not required, we should not apply the public welfare offense rationale to interpret any statute defining a felony offense as dispensing with mens rea." "Id., 511 U.S. at ___, 114 S.Ct. at 1804. The federal statute considered in Staples, supra, provided up to ten years imprisonment for possession of unregistered firearms including a "machinegun" and the Court explicitly agreed with the Fifth Circuit in United States v. Anderson, 885 F.2d 1248, 1254 (5th Cir.1989) that "[i]t is unthinkable to us that Congress intended to subject such law-abiding, well-intentioned citizens to a possible ten-year term of imprisonment if ... what they genuinely and reasonably believed was a conventional semiautomatic [weapon] turns out to have worn down into or been secretly modified to be a fully automatic weapon." Id., 511 U.S. at ___, 114 S.Ct. at 1802. In the instant case, the relatively minor penalty provided by LSA-R.S. 26:171, contrasted with the much more severe felony sanctions provided by Louisiana's general obscenity statute, appears wholly consistent with treating LSA-R.S. 26:90 as an essentially regulatory statute.
Furthermore, intent is not an element of the relevant portions of LSA-R.S. 26:90; sections (A)(13) and (D)(3) are silent concerning the requisite intent. However, other sections of LSA-R.S. 26:90, such as (A)(3) and (A)(6) do use the word "intentionally." Presumably, if the Legislature wished to include a mens rea element in sections (A)(13) and (D)(3), as it did in sections (A)(3) and (A)(6), it could have done so. Therefore, because this crime is a public welfare or regulatory offense, the mens rea element is not required. As the Supreme Court stated in Morissette, supra, as a policy matter, intent is not required as an element of regulatory offenses because
[t]he accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who has assumed his responsibilities.
342 U.S. at 256, 72 S.Ct. at 246.
It is clear that the defendant here, as the proprietor of a barroom and holder of a beer and liquor permit, knew he was dealing with the regulated item, alcohol. Thus, he was alerted to the existence of the multitude of regulations, including the ban on nudity, imposed on those who operate a business under an alcoholic beverage permit. If the defendant wishes to hold an alcoholic beverage permit, he must be expected to know the law and be in control of his premises. Because this statute only applies to those who hold permits, permittees (like the defendant) who have chosen to subject themselves to the regulatory scheme of the Alcoholic Beverage Control Law have fair notice of the proscribed conduct to satisfy the requirements of due process. No one is entitled by right to an alcoholic beverage permit. *1164 City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239, 241 (1954). Thus, the state is authorized to set criteria for those seeking and operating a business with a permit. Policy in this highly regulated area of activity dictates that a permittee should be diligent in following the requirements of the Alcoholic Beverage Control Law and vigilant in monitoring his premises for activities that contravene the law, such as underage drinking, illegal gambling, or nudity.
Although there is no general requirement under Louisiana law that all crimes have an intent requirement, this court has previously held that certain offenses must contain a mens rea element. In Brown, supra, this court held that the legislature cannot make criminal the unknowing possession of a dangerous drug. We stated:
Although strict liability offenses do exist in the criminal law and do not in all instances offend constitutional requirements, these are limited in number and of a nature different from the statute being challenged here ... [T[he statute at issue here criminalizes unknowing possession. It requires little imagination to visualize a situation in which a third party hands the controlled substance to an unknowing individual who then can be charged with and subsequently convicted for violation ... without ever being aware of the nature of the substance he was given. A situation such as the above does indeed offend the conscious [sic].
Brown, 389 So.2d at 50-51.
Applying this rationale to the instant case, the defendant cites State v. Rose, 147 La. 243, 84 So. 643 (1920), and State v. Video Joe, Inc., 578 So.2d 182, 189 (La.App. 1st Cir. 1991), for the proposition that a statute banning lewd dancing must have a scienter requirement. In the Rose case, this court stated in dicta:
If lewd dancing was done in the place without defendant's knowledge and despite his faithful attempt to prevent it, he was not guilty of permitting lewd dancing in the place, and should not have been convicted.
84 So. at 647.
However, the defendant's reliance on Rose, supra, is mistaken because the question of whether scienter is constitutionally necessary in this type of statute was not before the court. More importantly, the measure in Rose was not part of the Alcoholic Beverage Control Law, but was a general obscenity statute. Both state and federal courts have repeatedly held that scienter is a necessary element of the offense of obscenity, unlike regulatory or public welfare offenses. See, e.g., State v. Video Joe, supra (proof of scienter required to convict owner of video store of distributing obscene material); United States v. X-Citement Video, Inc., ___ U.S. ___, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (federal child pornography law which bars the "knowing" transportation or receipt of explicit visual materials depicting minor engaged in sex requires proof that the accused knew of the sexually explicit nature of the material and of the age of the performers); Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (statute prohibiting mailing of obscene materials does not require proof that defendant knew the materials at issue met the legal definition of obscenity, but the government must show that the defendant "knew the character and nature of the materials" with which he dealt); Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959) (eliminating the requirement of scienter, that a bookseller actually know that contents of the book, unconstitutionally inhibits expression).
However, as discussed above, LSA-R.S. 26:90 is a regulatory offense, not a general criminal offense. Because a person voluntarily subjects himself to the regulatory scheme under the Alcoholic Beverage Control Law, an offense under that law is treated differently than other criminal offenses which are generally applicable to all people regardless of their choice. Thus, the defendant's reliance on the above jurisprudence to support his contention that the offense should have a scienter element is inappropriate.
Unlike other matters of public welfare, the regulation of alcoholic beverages has a unique constitutional status. A state's authority to regulate the distribution and consumption of alcoholic beverages comes *1165 not only from the traditional source of police power, but also from the Twenty-first Amendment.[4] While it did not discuss the presence or absence of a scienter requirement in such statutes, the United States Supreme Court has repeatedly upheld alcoholic beverage control laws which prohibit nude dancing, based on the states' power under the Twenty-first Amendment.
The Supreme Court has recognized that a state has "absolute power under the Twenty-first Amendment to prohibit totally the sale of liquor within its boundaries ... [and] ... has broad power under the Twenty-first Amendment to regulate the times, places, and circumstances under which liquor may be sold." Bellanca, 452 U.S. at 715, 101 S.Ct. at 2600 (citations omitted). Furthermore, the Court has stated:
While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals.
California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972).
In LaRue, the Supreme Court upheld the facial constitutionality of a statute prohibiting acts of "gross sexuality," including the display of the genitals and live or filmed performances of sexual acts, in establishments licensed by the state to serve liquor. Although the Court recognized that not all of the prohibited acts would be found obscene and were therefore entitled to some measure of First Amendment protection, it reasoned that the statute was within the state's broad powers under the Twenty-first Amendment to regulate the sale of liquor. 409 U.S. at 113-17, 93 S.Ct. at 395-96.
In Doran v. Salem Inn, Inc., 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), the Court noted that a statute narrowly drawn to ban nudity only in establishments which are licensed to serve liquor would likely survive judicial scrutiny because
the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment, outweighed any First Amendment interest in nude dancing and that a State could therefore ban such dancing as part of its liquor license control program.
422 U.S. at 931-34, 95 S.Ct. at 2568-69.
Furthermore, in Bellanca, supra, the Court upheld a provision of the New York Alcoholic Beverage Control Law which prohibited nude dancing in establishments licensed by the State to sell liquor for on-premises consumption.[5] The Supreme Court stated:
What the New York Legislature has done in this case is precisely what this Court has said in Doran a State may do. Pursuant to its power to regulate the sale of liquor within its boundaries, it has banned topless dancing in establishments granted a license to serve liquor. The State's power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where topless dancing occurs.... Whatever artistic or communicative value may attach to topless dancing is overcome by the State's exercise of its broad powers arising under the Twenty-first Amendment.
452 U.S. at 717, 101 S.Ct. at 2601-02.
In addition, the Court has applied the same rationale to uphold a municipal ordinance banning nudity at licensed establishments, provided a state grants the appropriate authority to the municipality. City of *1166 Newport, Kentucky v. Iacobucci, 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986). At least one court in this state has followed the lead of the United States Supreme Court and upheld a municipal ordinance prohibiting nudity at places serving alcohol based on the authority given to state and local governments by the Twenty-first Amendment. Vonderhaar v. Parish of St. Tammany, 633 So.2d 217 (La.App. 1st Cir.1993).
Many states have done the same, upholding similar state statutes and municipal ordinances which ban nudity at establishments licensed to sell alcoholic beverages. See, e.g., Knudtson v. City of Coates, 519 N.W.2d 166 (Minn.1994); Gravely v. Bacon, 263 Ga. 203, 429 S.E.2d 663 (Ga.1993); City of Billings v. Laedeke, 247 Mont. 151, 805 P.2d 1348 (Mont. 1991); State ex rel. Richardson v. Pierandozzi, 117 Idaho 1, 784 P.2d 331 (Idaho 1989); O'Day v. King County, 109 Wash.2d 796, 749 P.2d 142 (Wash.1988); City of Daytona Beach v. Del Percio, 476 So.2d 197 (Fla. 1985); Olson v. City of West Fargo, 305 N.W.2d 821 (N.D.1981); Nall v. Baca, 95 N.M. 783, 626 P.2d 1280 (N.M.1980); Gabriele v. Town of Old Orchard Beach, 420 A.2d 252 (Me.1980); Ex parte Alabama Alcoholic Beverage Control Board, 386 So.2d 220 (Ala.1980); Three K.C. v. Richter, 279 N.W.2d 268 (Iowa 1979).
As the United States Supreme Court has consistently held, the Twenty-First Amendment to the United States Constitution gives broad, sweeping power to state governments to regulate and control the sale of intoxicating beverages. See, e.g., LaRue, supra; Bellanca, supra. There is no inherent right to sell intoxicating liquor, and the state, under its police power, may regulate and control the sale of alcoholic beverages so as to limit to the utmost the evils associated therewith. Rebowe, supra; State v. Morton, 182 La. 887, 162 So. 718 (1935).
Based on the foregoing, it is apparent that a public welfare, regulatory statute banning nudity at a licensed premises where alcohol is served does not require the element of scienter in order to be valid. Consequently, we find that the trial court erred in finding that the complained of portions of LSA-R.S. 26:90 were unconstitutional on the basis that they did not require mens rea.

First Amendment
The defendant next argues that interpreting LSA-R.S. 26:90 as a strict liability statute inhibits the exercise of First Amendment rights. He maintains that the banned conduct, nude dancing, is constitutionally protected. The defendant asserts that, if he is held strictly liable for the obscenity of others at his establishment, as the owner, he will be forced to discontinue all forms of expressive conduct, such as exotic dancing, to eliminate the risk of unlawful conduct by those for whom he could be held strictly liable. The defendant contends that this is an impermissible interference with the public's right to engage in this constitutionally protected speech and his right to promote it.[6]
In support of this position he cites Smith v. California, supra. In the Smith case, the United States Supreme Court held unconstitutional an obscenity statute which eliminated the requirement that a disseminator of obscene material actually know the contents of the material sold. The Court found that the lack of a scienter element unconstitutionally inhibits expression because "if the bookseller is criminally liable without knowledge of the contents, ... [the bookseller] will tend to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature." Smith, 361 U.S. at 151-153, 80 S.Ct. at 218.
The defendant's reliance on Smith is misplaced. First, the measure at issue in Smith was an obscenity statute, not a public welfare, regulatory statute, discussed by the Court in Morissette. Second, Smith deals with pure speech, i.e. books, not expressive *1167 conduct, such as dancing, which is entitled to a lesser degree of First Amendment protection. United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). The conduct involved, nudity, is already proscribed by LSA-R.S. 106(A)(1), which bans nudity in public places, including barrooms, and has been upheld as constitutional. State v. Walters, 440 So.2d 115, 122 (La.1983). As the Supreme Court stated in LaRue:
[A]s the mode of expression moves from the printed page to the commission of public acts that may themselves violate valid penal statutes, the scope of permissible state regulations significantly increases.
409 U.S. at 117, 93 S.Ct. at 396.
The defendant appears to argue that in banning constitutionally unprotected obscene conduct, the statute will chill the expression of protected conduct, nude dancing. The United States Supreme Court has flatly rejected this argument. The defendant is correct in maintaining that nude dancing is subject to First Amendment protection. Barnes v. Glen Theatre, Inc., 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); Schad v. Borough of Mount Ephraim, 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981); LaRue, 409 U.S. at 117-19, 93 S.Ct. at 397. However, where the governmental interest sought to be regulated is unrelated to the suppression of expression, the law will be upheld in certain cases, despite its incidental limitation on expressive activity. Barnes, 501 U.S. at 565-68, 111 S.Ct. at 2460-61; O'Brien, 391 U.S. at 375-76, 88 S.Ct. at 1678. Thus, the Court has upheld a state law ban on nudity, notwithstanding the fact that nude dancing is expressive conduct protected by the First Amendment, because the ban targeted only nudity, the non-communicative element of the activity. Barnes, 501 U.S. at 569-72, 111 S.Ct. at 2462-63.
In addition, after the Smith decision, the United States Supreme Court has held specifically that laws banning nudity in businesses serving alcohol do not offend First Amendment guarantees, even though minimally protected conduct, such as nude dancing, would be proscribed as well. LaRue, supra; Doran, supra; Bellanca, supra; Iacobucci, supra. Also see, Vonderhaar, supra.
Enacting a special regulatory measure to ensure that the illegal activity of public nudity does not occur in conjunction with the sale of alcoholic beverages is a reasonable restriction that does not impermissibly curtail First Amendment rights. Furthermore, a ban on nudity at licensed establishments is rationally related to the state's goal of curtailing the undesirable secondary effects that often accompany alcoholic beverage outlets. LaRue, 409 U.S. at 117-19, 93 S.Ct. at 397; Vonderhaar, 633 So.2d at 222-23.
Therefore, there is no constitutional violation in holding a barroom owner strictly liable for nudity on his premises, even though it would cause him to prevent others from exercising their First Amendment right to dance nude at his establishment.

CONCLUSION
Based on the foregoing, the statutory provisions in question, LSA-R.S. 26:90(A)(13) and (D)(3), are not unconstitutional. Therefore, the judgment of the trial court is reversed, and the case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
LEMMON, J., concurs and assigns reasons.
NOTES
[1] Judge Charles R. Lindsay of the Court of Appeal, Second Circuit, sitting by assignment in place of Justice James L. Dennis. Pursuant to Rule IV, Part 2, § 3, Chief Justice Calogero was not on panel that heard and decided this case. State v. Barras, 615 So.2d 285, 286 n. 1 (La. 1993).
[2] The description of the offense as set forth in the Bill of Information is incorrect; the offense under LSA-R.S. 26:90 should be called Permitting Prohibited Acts on Premises, not Letting Prohibited Acts on Premises.
[3] Although the trial court did not specify the basis for its ruling of unconstitutionality, we assume for purposes of this opinion that the claimed violation arises from the defendant's right to due process under U.S. Const.Amend. XIV and La. Const. Art. I, Sec. 2.
[4] "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const.Amend. XXI § 2.
[5] The statute provides: "No retail licensee for on premises consumption shall suffer or permit any person to appear on licensed premises in such manner or attire as to expose to view any portion of the pubic area, anus, vulva, or genitals, or any simulation thereof, nor shall suffer or permit any female to appear on licensed premises in such manner or attire as to expose to view any portion of the breast below the top of the areola, or any simulation thereof." N.Y.Alco.Bev.Cont.Law, § 106 (McKinney Supp. 1980-1981).
[6] Although R.S. 26:90 has not infringed on the defendant's exercise of his First Amendment rights, he may assert a facial challenge to the statute. Litigants are permitted to challenge the law, not because their own rights of free expression are violated, but because of a judicial presumption that the existence of the law may cause others, not before the court, to refrain from constitutionally protected speech or expression. State v. Newton, 328 So.2d 110 (La. 1975).