No. 12389

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

WADE V. LEWIS, SR., and ELKHORN
MINING COMPANY, a Montana Corporation,

Plaintiff and Respondent,

-vs-

READER'S DIGEST ASSOCIATION INC.,
a Corporation and the HEARST CORPORATION,
a Corporation,

Defendants and Petitioners.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Petitioners:

Loble, Picotte, Loble, Pauly & Sternhagen, Helena,
Montana.
Peter Pauly argued, Helena, Montana.
Gough, Booth, Shanahan and Johnson, Helena, Montana.
Ronald F. Waterman argued, Helena, Montana.

For Respondent:

Bolkovatz, Romine and Bell, Helena, Montana.
John F. Bell argued, Helena, Montana.

---

Submitted: May 29, 1973

Decided: JUL 1 8 1973

Filed: JUL 1 8 1973

*Thomas J. Kearney*
Clerk

PER CURIAM:

This is an original declaratory judgment action filed pursuant to the provisions of Rule 1 of the ~~Montana~~ Rules of ~~Appellate Civil Procedure~~ *the Montana Supreme Court* based upon certification to this Court by the Hon. James F. Battin, the United States District Judge presiding in Civil Action No. 2033 in the United States District Court for the District of Montana, Butte Division, entitled "Wade V. Lewis, Sr. and Elkhorn Mining Company, a Montana corporation, Plaintiffs, vs. Reader's Digest Association, Inc., a corporation, and The Hearst Corporation, a corporation, Defendants." In that suit in federal court there is a controlling question of Montana law as to which there is a substantial ground for difference of opinion, adjudication of which by this Court will materially advance ultimate termination of the federal litigation.

The question for determination, as stated by Judge Battin in his Certificate of Facts and Issues is:

> "In a libel action, does Montana adopt the 'single' or 'multi' state publication rule for purposes of determining the situs and time of the tort, where the defendants accomplish a multi-state circulation of their publication but other than such circulation have no contacts with this state"?

The facts giving rise to this issue are set forth in Judge Battin's Certification of Facts and Issues, which we will summarize:

Plaintiff Lewis is a resident of Boulder, Montana. Plaintiff Elkhorn Mining Company operates a "health" mine located near the City of Boulder, Jefferson County, Montana. The mine is said to be a cure for sufferers of arthritis and other diseases.

In the August 1969 issue of Good Housekeeping, a publication of defendant Hearst Corporation, an article was printed, entitled: "What You Should Know About Arthritis Quacks".

- 2 -

The article contained a paragraph reading:

> "Promoters of quack 'cures' have become unspeak-
> ably bold. In Boulder, Montana, there is an
> abandoned uranium mine whose glowing advertise-
> ments lure thousands each year to soak up radon,
> a radioactive gas in hopes of relieving their
> pain. The AMA has called this type of treatment
> not only useless, but potentially dangerous.
> Nevertheless, when news accounts reported that
> the famous heart-transplant pioneer, Dr. Christian
> Barnard, had arthritis in his hands, the mine
> owners actually sent him a brochure and invited
> him to take the cure!"

The January 1970 issue of defendant Reader's Digest magazine printed a condensed version of the Good Housekeeping article. The third paragraph of that version was identical to the paragraph set forth above.

The January 1970 issue of Reader's Digest was purchased by or delivered to nearly one-half of the families residing in Montana, and a substantial but unknown number of the August 1969 issue of Good Housekeeping was likewise so purchased or delivered.

Contending they were libeled by publication and republication of the paragraph heretofore quoted, plaintiffs brought suit for $30,575.83, "direct, immediate and provable damages"; and for $200,000 punitive and exemplary damages.

Both defendant Hearst Corporation and defendant Reader's Digest Association, Inc. are incorporated in Delaware and each has its principal office in the State of New York. Neither corporation is qualified to do business in Montana nor has any office in this state. The only contacts defendants have with Montana are through subscription and wholesale distribution of its magazines to individuals and local or independent national distributors in Montana.

The August 1969 issue of Good Housekeeping containing the alleged libelous paragraph was printed at Kokomo, Indiana. The January 1970 issue of Reader's Digest, sold or distributed in

Montana, was printed at Dayton, Ohio.

Defendants have filed motions in the federal court action to dismiss plaintiffs' libel action for lack of jurisdiction. The federal district court "is convinced that defendants' jurisdictional motion will be disposed of only by the answer of the Montana Supreme Court to the question" certified to it in the instant proceeding. In certifying the question to this Court, the federal district court stated the matter in this fashion:

> "The question deals with whether or not the defendants in this case are subject to the jurisdiction of [the Montana federal court] because ' * * * The cause of action [is] * * * one which arises out of, or results from the activities of the defendant within the forum * * *' Brecht v. RMK-BRJ, 24 St. Reptr. 761, 763 (Dist. of Mont., 1967); L. B. Reeder Contractors of Arizona v. Higgins Industries, Inc., 265 F.2d 768 (9th Cir. 1959); Rule 4(e), Federal Rules of Civil Procedure; and Rule 4B(1), Montana Rules of Civil Procedure. If Montana follows what is defined below as the multi-publication rule, the cause of action in this case arose upon the arrival and sale of the defendants' periodicals in Montana. If, on the other hand, Montana follows what is defined below as the single publication rule, one cause of action arose upon the first publication or printing of the articles, and no other cause of action can arise out of the publication of the articles."

Whether Montana is to follow the single publication or multi-publication rule is one of first impression in this state.

The United States District Court has set out a legal definition of the two rules:

> "Single Publication: 'A single publication occurs in cases of multi-state circulation of periodicals where the cause of action for libel is absolutely complete at the time of the first publication; subsequent appearances or distribution of the periodicals are of no consequence whatsoever to the creation or existence of a cause of action but are only relevant in computing damages.'
> Insull v. New York, World Telegram Corporation, 273 F.2d 166, 171 (7th Cir. 1959)."

> "Multi-Publication: 'The multiple publication rule is that each time a libelous article is brought to the attention of a third person a new

publication has occurred; * * * each pub-
lication is a separate actionable tort; and
* * * each time a * * * magazine containing
libelous material is sold or distributed, a
new publication has occurred and a fresh
tort has been committed, which, defenses aside,
is actionable.'
    Hartman v. Time, Inc., 166 F.2d 127, 132
    (3rd Cir. 1947)."

The origin of the multi-publication rule is the common

law. The King v. Carlisle, 1 Chitty 451, 18 Eng. Common Law

Reports 248; The Duke of Brunswick v. Harmer, 14 Q.B. 185,

117 Eng. Rep. 75. This rule is the view of the American Law

Institute (Restatement, Torts, § 578, Comment b.) and there

are several United States jurisdictions in which it is still

the last word of the courts. Prosser, Law of Torts, 4th ed.

p. 769, footnote 91, cites Staub v. Van Benthuysen, 36 La. Ann.

467; Renfro Drug Co. v. Lawson, 138 Texas 434, 160 S.W.2d 246;

Louisville Press Co. v. Tenelly, 105 Ky. 365, 49 S.W. 15; Holden

v. American News Co., 52 F.Supp. 24, dismissed 144 F.2d 249;

Hartman v. American News Co., 69 F.Supp. 736, affirmed 171 F.2d

581. However, with the advent of mass printing and interstate

circulation of newspapers, magazines and periodicals, etc.,

some courts became increasingly concerned with problems such as

the multiplicity of actions and application of the statute of

limitations to libel actions. See: Ogden v. Association of

United States Army, 177 F.Supp. 498; Mattox v. News Syndicate

Co., 176 F.2d 897, cert. den. 338 U.S. 858, 94 L.Ed. 525, 70 S.Ct.

100.

The single publication rule, which originated in New

York, as stated in 50 Am Jur 2d, Libel and Slander, § 153:

    " * * * evolved as a practical means of pro-
    tecting the forum against multiplicity of
    suits and indefinite tolling of the statute
    of limitations, and where a publication has
    an impact in more than one state, a question
    of conflict of laws arises as to whether
    and to what extent the 'multiple publication'

rule or the 'single publication' rule governs."

Despite the numerical weight of authority following the single publication rule, we consider it unsound. Conceived as a judge-made rule to serve the interests of judicial administration and expediency, it nevertheless is wrong in principle and in practice creates far graver problems than it solves.

The underlying purpose of libel laws is to furnish a means of redress for defamation. Every person is entitled to enjoy his reputation unimpaired by false and defamatory remarks. An action for libel or slander is based upon a violation of this right which exposes a person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation. Section 64-201 et seq., R.C.M. 1947; 50 Am Jur 2d, Libel and Slander, §1.

In a libel action the interest protected is that of reputation. Thus, before there can be tort liability the defamation must have been communicated to someone other than the person defamed. This element of communication is given the technical name of "publication". Every sale or delivery of the defamatory article is a distinct publication, causing injury to the defamed person, and a separate basis for a cause of action. Prosser, Law of Torts, §113; 1 Harper and James, The Law of Torts, §5.15.

Where the publication has an impact in many states, as in the present case, involving nationally circulated magazines, a question arises concerning which state law governs. Applying the usual conflict of laws rule governing torts, i.e. that the law of the place of injury controls, presents practical difficulties in actions involving a multi-state tort, since it is very possible the plaintiff was "injured" in several states. The single publication rule, however, does not solve this problem. Hartmann v. Time, 166 F.2d 127; Anno. 58 ALR2d 650. Generally

- 6 -

in cases of multi-state libel, the greatest harm to a person's reputation will occur in the state of domicile. To promote the underlying purpose of libel laws some courts have seen fit to apply the law of the plaintiff's domicile. This is a better rule than that which would restrict the plaintiff to the place of printing. Dale System, Inc. v. Time, Inc., 116 F.Supp. 527; Fouts v. Fawcett Publications, 116 F.Supp. 535; Hazlitt v. Fawcett Publications, 116 F.Supp. 538. This rule has the positive effect of restricting forum shopping by the plaintiff cited as a problem with multi-publication rule. In addition, it would prevent the publishing company from choosing as a place of printing a state with favorable libel laws.

Another problem often confronted by the courts when applying the multi-publication rule is that of an indefinite tolling of the statute of limitations. This evolves if it can be said that every time the defamation is communicated to a third party a separate cause of action arises. But a rule holding that the period of limitation begins to run from the time of the first printing may unduly leave the plaintiff unprotected. An unscrupulous publisher might print a defamatory article about a Montanan and distribute a few copies in New York; the plaintiff might well feel that the time and expense involved would not warrant the filing of an action; then after the period of limitation ends the publisher could flood Montana and the rest of the country with the article without fear of liability. See Dominiak v. National Enquirer, 439 Pa. 222, 266 A.2d 626. The single publication rule has not solved this problem nor has it set a specific time for the statute of limitations to begin running. Rather, the courts have set forth various holdings differing from state to state for the time the publication is said to begin. Anno. 42 ALR3d 807.

The single publication rule has been used in several states to set venue and jurisdiction at the place of printing. If this rule were adopted as the law in this state the plaintiff, a Montana corporation, conducting its business solely in this state, would be limited to maintaining its suit in Kokomo, Indiana, or Dayton, Ohio, the jurisdiction where the magazines were printed. The expense of bringing such suit would effectively eliminate redress as a practical matter for a plaintiff residing in a distant state such as Montana.

Defendants contend adoption of the multiple publication rule would subject them to a multitude of suits in every state and this will have a "chilling effect" upon the First Amendment's freedom of the press. We have taken into account those considerations. We remain unconvinced that adoption of the multi-state publication rule will inhibit the zeal with which national periodicals disseminate their ideas. We believe that any protection given the press under the First Amendment of the United States Constitution must be balanced against a citizen's right to protect his reputation and good name in the community in which he resides against printing and publication of false defamatory statements. Montana's new Constitution affirms this principle. Art. II, Sec. 7, 1972 Montana Constitution.

The principle of res judicata in conjunction with state and federal rules of civil procedure requiring plaintiffs to include in one action all causes based on publications made by the defendant prior to the time of suit, perhaps offers the best method of resolving the problem of multiple suits.

Much has been said in the briefs concerning the infringement upon freedom of the press if the multi-publication rule is adopted. Historically, the free press amendment is construed to mean freedom from three major types of restraint: censorship,

- 8 -

licensing, and seditious libel, which is defamation of the government. Firstamerica Dev. Corp. v. Daytona Beach N.J. Corp, (Fla. 1966) 196 So.2d 97.

The United States Supreme Court has repeatedly stated that freedom of speech and press does not permit the publication of libels. Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.ed 1031; Beauharnais v. Illinois, 343 U.S. 250, 72 S.Ct. 725, 96 L.ed 919, (reh.den. 343 U.S. 988, 72 S.Ct. 1070, 96 L.ed 1375); Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L ed 2d 1498, (reh. den. 355 U.S. 852, 78 S.Ct. 8, 2 L ed 2d 60).

Freedom of speech, expression, and press was intended to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L ed 2d 1498. It was not designed to confer special privileges upon persons engaged in the publishing business. Barber v. Time, Inc., 159 S.W.2d 291, 348 Mo. 1199; Dupont Engineering Co. v. Nashville Banner Pub. Co. 13 F.2d 186. If we were to hold that a libel action could be brought only in the state in which these national magazines were printed, the advantage of the press over the public would be unconscionable.

Defendants contend the reasoning supporting the multiple publication rule has been outdated by technological changes in the printing field. They contend modern typesetting machines and rapid steam printing presses have made it possible to reproduce a number of copies of a single publication far beyond any number within the realm of contemplation a century ago.

Expanding a magazine to nationwide circulation may be conducive to a true free press. The widespread circulation of defendants' magazines suggests that their existence is predicated

upon a national market. But such a magazine cannot exercise
that right without observing corresponding responsibilities.
Freedom of the press was never intended to permit a business,
whose publication is prepared for a national audience,
to be free from suit in all states but that of printing. Curtis
Publishing Company v. Golino, 383 F.2d 586.

For these reasons we adopt the multi-publication rule.

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 12389

WADE V. LEWIS, SR.., and ELKHORN
MINING COMPANY, a Montana Corporation,

Plaintiff and Respondent,

vs.

READER'S DIGEST ASSOCIATION INC.,
a Corporation and the HEARST CORPORATION,

Defendants and Petitioners.

FILED

JUL 24 1973

*Thomas J. Kearney*

CLERK OF SUPREME COURT
STATE OF MONTANA

ORDER AMENDING OPINION

PER CURIAM:

IT IS ORDERED that the above-captioned opinion be amended in the following manner:

In the first paragraph on page 2, the second line which reads "pursuant to the provisions of Rule 1 of the Montana Rules of Appellate Civil Procedure" should be changed to read "pursuant to the provisions of Rule 1 of the Rules of the Montana Supreme Court".

DATED this 24th day of July, 1973.