George W. HICKEY, JR., Plaintiff,

v.

ST. MARTIN'S PRESS, INC.,
et al., Defendants.

Civil No. H–96–2530.

United States District Court,
D. Maryland.

Sept. 29, 1997.

Mark S. Zaid, James H. Lesar, Washington, DC, for plaintiff.

Lee T. Ellis, Jr., Robert D. Lystad, Baker & Hostetler, LLP, Washington, D.C., for defendants.

ALEXANDER HARVEY, II, Senior District Judge:

George W. Hickey, Jr. ("Hickey") is a retired Special Agent of the United States Secret Service. Between 1963 and 1971, he served in the Presidential and Vice Presidential protective details. On November 22, 1963, at the time of the assassination of President John F. Kennedy in Dallas, Texas, Hickey was riding in the Secret Service vehi-

cle immediately behind the one occupied by the President.

In February of 1992, St. Martin's Press, Inc. ("St.Martin's") published the hardcover edition of *Mortal Error*. The book was written by Bonar Menninger ("Menninger") and recounts a theory developed by Howard Donahue ("Donahue") that it was a shot from an AR–15 rifle held by Hickey which fatally wounded President Kennedy.

In 1995 and 1996, Hickey filed four different suits in four different jurisdictions, seeking to recover compensatory damages for allegedly defamatory statements contained in *Mortal Error*. In one or more of these actions, Hickey has named as defendants St. Martin's, St. Martin's Paperbacks, Simon & Schuster, Inc. ("Simon & Schuster"), Menninger and Donahue. He first sued Donahue in April of 1995 in the Circuit Court for Baltimore County. On October 2, 1995, Hickey filed a civil action in the United States District Court for the District of New Hampshire, naming as defendants St. Martin's, St. Martin's Paperbacks, Menninger and Simon & Schuster. On May 16, 1996, Hickey filed a civil action in the United States District Court for the District of Montana naming St. Martin's and Menninger as defendants. On August 14, 1996, Hickey filed a civil action in this Court naming ·Simon & Schuster and St. Martin's as defendants. That action was docketed as Civil No. H–96–2530.

The Montana suit has now been transferred to this Court and docketed as Civil No. H–97–875. The New Hampshire action has also now been transferred to this Court and has been docketed as Civil No. H–97–1637. By Order dated June 9, 1997, these three federal civil actions have been consolidated for all purposes pursuant to Rule 42(a), F.R.Civ.P. Diversity jurisdiction exists in all three cases under 28 U.S.C. § 1332(a).

Pending before the Court are the following motions: (1) defendants' motion for summary judgment; (2) plaintiff's cross-motion for partial summary judgment; and (3) plaintiff's motion for certification of questions to the Maryland Court of Appeals. Lengthy memoranda and numerous exhibits have been submitted in support of and in opposition to these pending motions. Argument of counsel has been heard at a hearing held in open Court. The principal issue presented by these motions is whether Hickey's claims asserted in the three consolidated cases are barred by limitations.

Following its review of the record here, this Court has concluded that defendants' motion for summary judgment must be granted, that plaintiff's cross-motion for partial summary judgment must be denied, and that plaintiff's motion for certification of questions to the Maryland Court of Appeals must also be denied.

I

*Background Facts*

Reputedly a ballistics and firearms expert, Donahue developed a theory that it was plaintiff Hickey who fired the shot which actually resulted in the death of President Kennedy.[1] This theory is discussed in some detail by Menninger in *Mortal Error*. The book states that Hickey was riding in the vehicle immediately behind President Kennedy and that, as Hickey was reacting to the shots fired by Lee Harvey Oswald, the vehicle carrying Hickey abruptly changed speed. According to the book, this sudden change of speed caused Hickey to lose his balance and to accidentally discharge his AR–15 rifle in the direction of President Kennedy. Menninger concurs in the Warren Commission's determination that shots fired by Oswald struck the President. However, he asserts in *Mortal Error* that it was plaintiff's shot which was the fatal wound.

The Donahue theory discussed in *Mortal Error* first received media coverage in the *Baltimore Sun* in 1977. On November 1, 1991, Hickey was formally notified that St. Martin's intended to publish the book. Hickey had previously declined to speak to Menninger or Donahue concerning the latter's

---

1. According to the book, Donahue investigated the assassination of President Kennedy over a period of some twenty-five years.

theory and continued to do so after he learned that the book was about to be published. In February of 1992, St. Martin's published the hard cover edition of *Mortal Error*. In April of 1992, Simon & Schuster published an audiotape version, and in September of 1992, St. Martin's published the paperback edition. More than two and one-half years later, on April 21, 1995, Hickey filed his first defamation action. That suit was instituted in the Circuit Court for Baltimore County and named Donahue as the only defendants. *Hickey v. Donahue*, Cir. Ct. for Balto. Co., Case No. 108/268/95CV3513. The *Donahue* action was later settled, and on February 21, 1996, a stipulation and notice of voluntary dismissal was filed by the parties dismissing the case with prejudice.

Meanwhile, Hickey had filed suit in the United States District Court for the District of New Hampshire on October 2, 1995. *Hickey v. St. Martin's Press, et al.*, Civil No. C–95–475–M. Dispositive motions were later filed by the defendants in the New Hampshire case. In an Order dated September 30, 1996, District Judge Stephen J. McAuliffe held that Hickey's claims based on publication of the hard cover version, the audiotape version and the paperback edition of *Mortal Error* were barred by the applicable three-year New Hampshire statute of limitations. The Court further held that claims seeking damages flowing from third-party republications of the allegedly defamatory statements contained in *Mortal Error* were not time-barred.

As noted, the Montana suit had been filed on May 16, 1996 and had named St. Martin's and Menninger as the defendants. *Hickey v. St. Martin's Press, et al.*, No. CV–96–053–GF. In that case, defendant Menninger filed a motion to dismiss the complaint for lack of personal jurisdiction, and defendant St. Martin's filed a motion requesting the Court to transfer the case to this Court or to stay proceedings pending resolution of the New Hampshire action. In a Memorandum and Order dated March 24, 1997, Senior District Judge Paul G. Hatfield transferred the Montana case to this Court pursuant to 28 U.S.C. § 1404(a).

Meanwhile, further motions were filed by the defendants in the New Hampshire case. Noting that Hickey's case was pending in this Court and that the District of Montana action had earlier been transferred here, Judge McAuliffe entered an Order on May 9, 1997 transferring the New Hampshire action to this Court · pursuant to 28 U.S.C. § 1404(a). As noted, all three of Hickey's pending suits have now been consolidated by Order of this Court.

## II

### *Summary Judgment Principles*

It is well established that a defendant moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). One of the purposes of Rule 56 of the Federal Rules of Civil Procedure is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show that the defendant may be liable under the claims alleged. See F.R.Civ.P. 56(e). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then "the plain Language of Rule 56(c) mandates the entry of summary judgment." *Catrett*, 477 U.S. at 323, 106 S.Ct. at 2552.

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), "when the moving party has carried its burden under Rule 56(c), its opponent must

do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). " 'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick,* 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 640 (E.D.N.C.1966), aff'd, 388 F.2d 987 (4th Cir.1967), *cert. denied,* 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In the absence of the necessary minimal showing by a plaintiff that a defendant may be liable under the claims alleged, the defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. *See Catrett,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53; *Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (quoting *Catrett,* 477 U.S. at 323–24, 106 S.Ct. at 2553).

■ Applying these summary judgment principles to the facts of record here, this Court has concluded that defendants' motion for summary judgment must be granted as to all counts in all three cases, and that plaintiff's motion for partial summary judgment must be denied. It is particularly important in a libel case involving First Amendment rights that a court carefully scrutinize the record to determine if a defendant is entitled to summary judgment. *Fornshill v. Ruddy,* 891 F.Supp. 1062, 1074 (D.Md.1995), aff'd 89 F.3d 828 (4th Cir.1996); *Washington Post Co. v. Keogh,* 365 F.2d 965, 968 (D.C.Cir.1966). What is apparent from the record here is that plaintiff Hickey waited much too long to seek recompense for the allegedly defamatory statements contained in *Mortal Error.*[2] He knew in November of 1991 that St. Martin's intended to publish the book accusing him of having accidentally fired the shot which killed President Kennedy.[3] The book was first published in February of 1992. However, Hickey waited until April of 1995 to file his first defamation action, and in that action he did not even name St. Martin's as a defendant. Three more suits were filed in three different federal courts in 1995 and 1996. The one in this Court was instituted on August 14, 1996.

By various means, counsel for Hickey has doggedly attempted to overcome the obvious hurdles posed by the bar of various applicable statutes of limitations. First, plaintiff has resorted to forum shopping. Since New Hampshire has a liberal three-year limitations period as compared to the one-year period in Maryland, a suit was filed in federal court in New Hampshire. Inasmuch as many years ago Montana had seemingly embraced the so-called multiple publication principle, *see Lewis v. Reader's Digest,* 162 Mont. 401, 512 P.2d 702 (1973), another action was filed in federal court in Montana. Finally, apparently recognizing that there were serious questions as to the existence of jurisdiction and venue both in New Hampshire and in Montana, plaintiff filed suit in this Court where jurisdiction and venue clearly existed. When it became apparent to plaintiff's counsel that claims based on the various original publications of *Mortal Error* were undoubtedly barred by limitations, counsel added to Hickey's principal claims assertions that he had been defamed by defendants' republications of the allegedly de-

---

**2.** Although advancing personal problems and other circumstances as grounds for his failure to act timely, plaintiff concedes that the reasons why he waited until 1995 to sue are legally irrelevant.

**3.** Donahue had been told by another Secret Service agent that Hickey had threatened suit if his name ever appeared in a book discussing Donahue's theory. *Mortal Error,* p. 121.

famatory statements and by third-party re-publications of these statements.

In the end, all of plaintiff's frantic maneuvering undertaken in an effort to salvage his stale claims must fail. The bottom line is simply that plaintiff did not act timely in seeking recompense for allegedly defamatory statements contained in *Mortal Error*. Nor, when he turned to New Hampshire, could venue and personal jurisdiction requirements be met in that State after his principal claims had been dismissed there. For the reasons discussed more fully hereinafter, this Court has concluded that defendants are entitled to summary judgment in all three of these pending cases.

### III

#### The Claims

The three pending consolidated cases present several different kinds of claims. First, plaintiff has alleged in all three cases that libelous material was contained in the hardcover version of *Mortal Error* published in February of 1992, in the audiotape version published in April of 1992, and in the paperback version published in September of 1992.[4]

Second, plaintiff has alleged that he was damaged by defendants' republication and sale of the libelous material in March and July of 1996.

As a third claim, plaintiff seeks to recover damages from defendants for republications by third parties of defamatory statements contained in *Mortal Error*. Such republications allegedly occurred in 1992 and 1993 in several books and a magazine and also allegedly occurred in 1996 when newspapers in various cities reported that Hickey had filed libel suits based on statements in *Mortal Error*.

In determining whether one or more of these claims are barred by limitations, the Court must examine not only the dates of the events alleged but also the nature of the claims themselves.

### IV

#### The Maryland Case

An action for libel or slander must under Maryland law be filed within one year from the date it accrues. Md. Cts. & Jud. Proc.Code Ann. § 5–105. In a libel action, the Maryland statute of limitations begins to run when the plaintiff knew or reasonably should have known that the defendant committed a wrongful act which injured or damaged the plaintiff. *Sears Roebuck & Co. v. Ulman,* 287 Md. 397, 401, 412 A.2d 1240 (1980). It is clear from the record here that plaintiff's claims based on the publication of the hardcover version of *Mortal Error,* on the publication of the audiotape version and on the publication of the paperback version all accrued in 1992. Plaintiff concedes that he knew of the forthcoming publication of the book in 1991. Suit was filed in this Court in August of 1996. There can be little doubt that these claims are all barred by Maryland's one year statute of limitations.

Relying on the so-called "multiple publication rule," plaintiff contends that on several dates in 1996 defendants republished *Mortal Error* and that claims based on such republications are not barred by Maryland law. In his amended complaint filed in the Maryland case, plaintiff has alleged that a copy of the hardback edition of *Mortal Error* was purchased in Stevens Point, Wisconsin on March 26, 1996 and that another copy of such hardback edition was purchased in Billings, Montana on July 31, 1996. According to plaintiff, these sales of *Mortal Error* constituted republications by defendants of libelous material causing harm to him in Maryland and other states and that such republications are not barred by limitations.

Under the "single publication rule," only one action for damages can be maintained as to any single publication. *Morrissey v. William Morrow & Co.,* 739 F.2d 962, 967 (4th Cir.1984). Under the "multiple publication rule," every sale or delivery of the defamatory article is viewed as a distinct publication which causes injury to the defamed person and creates a separate basis for a cause of action. *See Lewis v. Reader's*

---

4. Plaintiff has also alleged in all three cases

claims of false light invasion of privacy.

*Digest Ass'n, Inc.,* 162 Mont. 401, 512 P.2d 702, 705 (1973).

The great majority of the states now follow the single publication rule. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 777 n. 8, 104 S.Ct. 1473, 1480 n. 8, 79 L.Ed.2d 790 (1984). As explained by the Supreme Court in *Keeton,* the purpose of the single publication rule is

> to provide a forum for efficiently litigating all issues and damages claims arising out of a libel in a unitary proceeding. This rule reduces the potential serious drain of libel cases on judicial resources. It also serves to protect defendants from harassment resulting from multiple suits. *Restatement (Second) of Torts,* § 577A, Comment f (1977). *Id.* at 777, 104 S.Ct. at 1480.

As various courts have recognized, the multiple publication rule allows a plaintiff to harass a defendant by bringing numerous causes of action against the same defendant and also renders the statute of limitations in libel actions a nullity. *Givens v. Quinn,* 877 F.Supp. 485, 488 (W.D.Mo.1994); *Keeton v. Hustler Magazine,* 131 N.H. 6, 549 A.2d 1187, 1190 (1988). As the court observed in *Church of Scientology v. Minnesota State Med. Ass'n Found.,* 264 N.W.2d 152, 155 (Minn.1978), the single publication rule "is the better rule because it reflects the facts of modern-day mass publishing and duplicating and gives effect to the policy of repose underlying the statute of limitations."

The parties here agree that the Court of Appeals of Maryland has not expressly adopted either the single publication rule or the multiple publication rule. Plaintiff contends that this Court should certify to the Court of Appeals of Maryland the issue presented, and plaintiff has filed a motion seeking such certification.

■ In the absence of a controlling decision directly in point, a federal court will attempt to determine what the highest state court would hold if confronted with the same issue. *Sherby v. Weather Bros. Transfer Co.,* 421 F.2d 1243, 1244 (4th Cir.1970). If Maryland law is controlling in a case and if a Maryland court has not addressed a controlling issue, this Court must apply a rule which it reasonably believes would be adopted by the Maryland Court of Appeals. *Kirby v. Chrysler Corp.,* 554 F.Supp. 743, 749 (D.Md. 1982).

■ Following its review of the applicable authorities, this Court has concluded that the Court of Appeals of Maryland would adopt the single publication rule if the question were presented to it in this case. Accordingly, plaintiff's motion for certification will be denied, and this Court will apply the single publication rule in Civil No. H–96–2530, plaintiff's Maryland case.

A similar question was presented in *Morrissey,* a defamation action brought in the United States District Court for the Eastern District of Virginia. Under Virginia law, a one year statute of limitations applies to defamation actions. 739 F.2d at 967. However, the Virginia Supreme Court had never addressed the question whether the single publication rule or the multiple publication rule should apply in that State. In *Morrissey,* the District Court had held that the Virginia Supreme Court would adopt the single publication rule even though it had not at the time faced the issue. On appeal, the Fourth Circuit, citing *Keeton* and *Restatement(Second) of Torts,* Section 577A(4) (1977), noted that the great majority of the states now follow the single publication rule and held that the District Court was justified in deciding that this rule would be followed in Virginia. *Id.* For like reasons, this Court is satisfied that the Court of Appeals of Maryland would adopt the single publication rule.

■ Under the single publication rule which the Court will apply in this case, plaintiff is not entitled to avoid the bar of the Maryland statute of limitations by relying on sales of *Mortal Error* occurring in Wisconsin and Montana in 1996. Plaintiff's claims based on defendants' publications of *Mortal Error* accrued in 1992 and are barred by Maryland's one year statute of limitations.

■ In the amended complaint which he filed in this Court, plaintiff also seeks a recovery from defendants for republications by third-parties of allegedly defamatory statements contained in the book. Although

the Court of Appeals of Maryland has not addressed the question whether a plaintiff in a libel action can rely on republications by third parties, the Court of Special Appeals has held that liability may attach where a repetition of defamatory material is a natural and probable consequence of defendants' actions, or if the republication was reasonably foreseeable by the defendants. *Shepard v. Nabb,* 84 Md.App. 687, 700–01, 581 A.2d 839 (1990), *cert. denied,* 322 Md. 240, 587 A.2d 247 (1991).

Based on *Shepard,* this Court concludes that under the circumstances here republications by third parties would under Maryland Law give rise to a separate cause of action based on a theory of libel. Here, however, most of the third-party republications relied upon are barred by Maryland's one year limitations period. Plaintiff contends that there were third-party republications of libelous material in three books and one magazine published in 1992 and 1993. Clearly, Maryland's one year statute of limitations bars any recovery based on those third-party republications.

■ As a last resort, plaintiff has alleged in his amended complaint in the Maryland case that third-party republications contained in various newspapers in 1996 are actionable and has claimed that such republications are not barred by limitations. In May of 1996, an article was published in a New Hampshire newspaper reporting that Hickey had filed a libel action in the United States District Court for the District of New Hampshire based on allegedly defamatory statements contained in *Mortal Error.* In August of 1996, numerous articles were published in newspapers in Baltimore and various other cities reporting that Hickey had filed a libel action in this Court.

■ Following its review of the applicable authorities, this Court has concluded that Maryland law would not recognize as libel-

ous news coverage of the same lawsuit which asserted plaintiff's claim of libel.[5] Were the principle of Law advanced by plaintiff to be recognized, limitations could never be successfully applied in a libel action. A plaintiff whose suit was barred by limitations could avoid dismissal by relying on press accounts of the allegations set forth in his complaint. Such a bootstrapping procedure can hardly be countenanced. Various courts have recognized that "self publication" of an allegedly defamatory matter in a lawsuit does not create a viable claim of defamation. *See, e.g., Merritt v. Brantley,* 936 F.Supp. 988, 993 (S.D.Ga.1996). The general rule is that, if a person claiming to be defamed communicates the allegedly defamatory statements to another, no liability for any resulting damages is incurred by the originator of the statements. *Mendoza v. SSC & B Lintas,* 799 F.Supp. 1502, 1512 (S.D.N.Y.1992). By filing his amended complaint in this Court, plaintiff has voluntarily communicated to others the allegedly defamatory statements. This Court is satisfied that the Court of Appeals of Maryland would recognize these self-publication principles. Thus, plaintiff cannot defeat the applicable Maryland statute of limitations by relying on third-party republications in newspaper accounts which reported on the libel suits instituted by him.[6]

■ For all these reasons, this Court has concluded that defendants are entitled to summary judgment as to all of the claims alleged in Civil No. H–96–2530.[7]

## V

### *The Montana Case*

The complaint filed by plaintiff in the United States District Court for the District of Montana contains three counts. Count One alleges a claim of libel. Count Two seeks a recovery for false light invasion of privacy,

---

5. In view of this conclusion of the Court, there is no need to certify this issue to the Court of Appeals of Maryland.

6. These third-party republications clearly cannot on the record here be justified as "compelled" self-publications. *See DeLeon v. St. Joseph Hosp., Inc.,* 871 F.2d 1229, 1237 (4th Cir.1989).

7. Plaintiff's claim for false light invasion of privacy must also fail In Maryland, such a claim may not stand unless it also meets the standards for defamation. *Crowley v. Fox Broadcasting Co.* 851 F.Supp. 700, 704 (D.Md.1994).

and *Count* Three alleges republication of the libel by a third party. In the Order entered on March 24, 1997 in the Montana case, Judge Hatfield concluded that personal jurisdiction did not exist as to defendant Menninger. Reviewing the record in light of his ruling on this jurisdictional issue, Judge Hatfield transferred the case to this Court under 28 U.S.C. § 1404(a).

Under Montana choice of law rules, Maryland law, including Maryland's statute of limitations, applies to the claims asserted by plaintiff in his Montana case. *Lewis*, 512 P.2d at 705. Indeed, plaintiff has stipulated that Maryland law applies to his Montana claims.

Unlike the complaint which he filed in Maryland, plaintiff has not alleged in his Montana case that he was damaged by defendants' republications by way of sales of libelous matter in March and July of 1996. Nor has he alleged in the Montana case that republications by third parties of defamatory statements occurred in 1996 when newspapers in various cities reported that Hickey had filed libel suits based on statements contained in *Mortal Error*.

For the reasons stated in Part IV of this Opinion, this Court concludes that Maryland's one year statute of limitations bars all of the claims asserted by plaintiff in the suit filed by him in federal court in Montana. As alleged in plaintiff's Montana case, the original publication of the various versions of *Mortal Error* occurred in 1992, and the republications by third parties occurred in 1992 arid 1993. Plaintiff's Montana suit was filed on May 16, 1996. The claims there asserted are clearly barred by the applicable Maryland statute of limitations.

For these reasons, defendants are also entitled to summary judgment as to all claims asserted by plaintiff in Civil No. H-97-875.

## VI

### *The New Hampshire Case*

The posture of the New Hampshire suit is somewhat different from that of the other two. New Hampshire has a three year stat-

ute of limitations which is applicable in a libel action. Other than the suit he filed in state court in Maryland, the New Hampshire suit was the earliest of plaintiffs three federal actions.

Numerous pretrial motions were filed by the parties in the New Hampshire case. On two separate occasions, the New Hampshire Court was called upon to rule on dispositive and other motions filed by the defendants. In an Order entered on September 30, 1996, Judge McAuliffe held that, since the plaintiff had filed the New Hampshire action on October 2, 1995 which was more than three years after the September 1992 publication of the paperback version of *Mortal Error*, his suit was barred by New Hampshire's three year statute of limitations. Slip op at 4. The applicable New Hampshire statute is set forth in N.H.Rev.Stat. Ann. 508:4.

Relying on *Keeton v. Hustler Magazine, Inc.*, 131 N.H. 6, 11, 549 A.2d 1187 (1988), Judge McAuliffe further held in his Order of September 30, 1996 that the New Hampshire Supreme Court would adopt the single publication rule. Slip op. at 7–8. Accordingly, he determined that plaintiff's claims based on defendants' republications of the alleged defamatory statements after September of 1992 were also barred by the New Hampshire statute of limitations.[8] *Id.* Plaintiff's claims of republication by third parties were not dismissed by Judge McAuliffe. *Id.* at 11–13. He concluded that whether defendants should have reasonably foreseen the republication of the allegedly defamatory statements contained in various published forms of *Mortal Error* was a disputed question of fact which could not be determined by way of defendants' motion for summary judgment. *Id.* at 13. Judge McAuliffe also held in his Order of September 30, 1996 that personal jurisdiction existed over defendants consistent with the due process clause and the New Hampshire long arm statute. *Id.* at 11.

Several weeks after Judge McAuliffe's ruling of September 30, 1996, defendants filed further motions. On October 18, 1996, defendants filed a motion for further clarification, correction and/or reconsideration of the

---

**8.** *Judge McAuliffe also dismissed plaintiff's claim* *for false light invasion of privacy.*

Court's Order of September 30, 1996 and also a motion to dismiss plaintiff's claims of "republication" on grounds of improper venue and lack of personal jurisdiction, or in the alternative to transfer. These motions were fully briefed by the parties. In March of 1997, defendants, in support of their then pending motions, submitted to Judge McAuliffe a copy of Judge Hatfield's Order of March 24, 1997 transferring the Montana case to this Court.

In an Order dated May 9, 1997, Judge McAuliffe addressed the motions then pending before him. He noted that as a result of his Order of September 30, 1996, the only remaining claims of plaintiff in the case were those based on republications by third parties of allegedly defamatory statements contained in *Mortal Error*. Slip op. at 4. Recognizing that plaintiff's remaining claims sought to hold the publishers themselves liable exclusively for third party references to *Mortal Error*, Judge McAuliffe observed that "these facts place this case in an unusual posture." *Id.* at 4–5. In view of the pendency in this Court of an identical suit and in view of the transfer of the Montana case to this Court, Judge McAuliffe concluded that the New Hampshire case should also be transferred to this Court under 28 U.S.C. § 1404(a). In the Order entered in the New Hampshire case on May 9, 1997, defendants' motion for further clarification was granted in part and denied in part "without prejudice to the refiling of such a motion, if appropriate, with the United States District Court for the District of Maryland." *Id.* at 10. Without addressing issues of personal jurisdiction and venue which had been raised by defendants' motion to dismiss or to transfer, that motion was granted in part and denied in part. *Id.*

■ As a result of the rulings made by Judge McAuliffe in the New Hampshire case, the only claim remaining in that case is the one asserted by plaintiff for third-party re-

publications in 1992 and 1993 of defamatory statements contained in *Mortal Error*.[9] The three year New Hampshire statute of limitations bars claims arising from publications of *Mortal Error* in 1992. Similarly, since New Hampshire has adopted the single publication rule, plaintiff's claim that he was damaged by defendants' republications and sale of the libelous material is likewise barred. In their motion for summary judgment, defendants assert various grounds in support of their contention that plaintiff is not entitled to proceed to trial in his transferred New Hampshire case on his claim that he has been damaged by republications by third parties of defamatory statements contained in *Mortal Error*. *Inter alia*, defendants argue that once the underlying libel claims in the New Hampshire case were dismissed by Judge McAuliffe, no basis remained for the assertion by the New Hampshire Court of personal jurisdiction and venue over defendants. This Court would agree.[10]

In opposing defendants' jurisdiction and venue arguments, plaintiff first insists that this Court may not address those issues because the New Hampshire Court has previously rejected defendants' contentions of lack of personal jurisdiction and improper venue at least twice. The record here does not support that assertion. Neither in his Order of September 30, 1996 nor in his Order of May 9, 1997 did Judge McAuliffe ever address defendants' contention that the New Hampshire case should be dismissed on the ground of improper venue. Although in his Order of September 30, 1996, Judge McAuliffe did conclude that personal jurisdiction then existed over defendants, he did not in his Order of May 9, 1997 address the question whether such jurisdiction would still exist after plaintiff's underlying claims had been dismissed. In the May 9 Order, he invited defendants to refile their motions in

9. Plaintiff neither alleged in his New Hampshire case that he was damaged by defendants' republications and sales of libelous matter in March and July of 1996, nor did he allege that there were third-party republications in 1996 when newspapers reported that Hickey had filed libel suits.

10. In view of this Court's determination of the venue and jurisdiction issues, it is not necessary to address defendants' alternative argument that Maryland law and Maryland's statute of limitations should be applied to plaintiff's New Hampshire claims.

this Court "if appropriate." [11]

 There is no merit to plaintiff's contention that Judge McAuliffe had invited defendants to refile, if appropriate, only the motion for clarification and not the motion to dismiss for lack of venue and personal jurisdiction. As disclosed by the record here, both of these motions were filed in the New Hampshire case at the same time. In one of their motions, defendants had noted that, if the Court chose to transfer the case to Maryland, it could then defer ruling on the venue and personal jurisdiction issues. Judge McAuliffe did just that. He transferred the New Hampshire case to Maryland, and he did not address the procedural issues. It is thus apparent that Judge McAuliffe denied defendants' venue and personal jurisdiction motions without prejudice to consideration by this Court of the issues raised. When a transferor court has not ruled on the propriety of venue or jurisdiction, the transferee court must determine whether venue and jurisdiction would have been proper in the transferor court. *Davis v. Costa–Gavras,* 580 F.Supp. 1082, 1085 (S.D.N.Y.1984). Even if a case has been transferred under § 1404(a), the transferee court may dismiss the case if the transferor court could not have obtained personal jurisdiction over the defendants. *Gimer v. Jervey,* 751 F.Supp. 570, 574 (W.D.Va.1990), *aff'd mem.,* 948 F.2d 1280 (4th Cir.1991).

On the record here, this Court is satisfied that it is now appropriate for it to consider these substantial issues. Considerably different questions of venue and personal jurisdiction are presented now that the only remaining claim in the New Hampshire case is that based on republications of defamatory material by third parties.

 What this Court must now determine is whether in the present posture of Civil No. H–97–85 venue and personal jurisdiction exist under New Hampshire law. Where, as here, a lawsuit has become reconstituted since the filing of the amended complaint, a court should reassess venue on

**11.** Since Judge McAuliffe never addressed the venue and personal jurisdiction questions presently before this Court, plaintiff's reliance on *Christianson v. Colt Indus. Operating Corp.,* 486

the basis of the circumstances as they now exist as opposed to the state of affairs when the complaint was first filed. *Knowlton v. Allied Van Lines, Inc.,* 900 F.2d 1196, 1200 (8th Cir.1990); *Saraco v. Hallett,* 831 F.Supp. 1154, 1163 (E.D.Pa.1993), *aff'd,* 61 F.3d 863 (Fed.Cir.1995).

 It is well established that in a case involving multiple defendants and multiple claims, the plaintiff bears the burden of showing that venue is appropriate as to each claim and as to each defendant. *VDI Technologies v. Price,* 781 F.Supp. 85, 92 (D.N.H. 1991); *Jarrett v. North Carolina,* 868 F.Supp. 155, 158 (D.S.C.1994). Venue is based on the Congressional decision concerning where a case should be heard and is a privilege given to the defendant primarily as a matter of convenience. *Johnson Creative Arts, Inc. v. Wool Masters, Inc.,* 743 F.2d 947, 949, 951 (1st Cir.1984).

28 U.S.C. § 1391(a) provides as follows:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

 After due consideration of the parties' arguments, this Court concludes that venue does not exist at this time in New Hampshire as to defendant Menninger. First, defendant Menninger is concededly not a resident of New Hampshire, and all defendants thus do not reside in that State. Therefore, venue does not exist under § 1391(a)(1).

U.S. 800, 816, 108 S.Ct. 2166, 2177–78, 100 L.Ed.2d 811 (1988) and the doctrine known as the "law of the case" is misplaced.

Nor can plaintiff establish venue over Menninger under § 1391(a)(2) on the ground that he has sued in a judicial district in which a substantial part of the events or omissions giving rise to the claim against Menninger occurred. Plaintiff's one remaining claim does not arise as a result of Menninger's participation in third-party republications in New Hampshire of versions of *Mortal Error.* There is no evidence in the record indicating that defendant Menninger played any part in the third-party republications alleged. Nor did he authorize such republications or intend that they should occur.

Finally, venue clearly does not exist under § 1391(a)(3). Plaintiff obviously cannot satisfy that requirement inasmuch as he must show that there is no other district where he could have sued in order for venue as to Menninger to exist in New Hampshire. By suing the defendants here in Maryland, plaintiff has asserted (and defendants concede) that both venue and personal jurisdiction exist in the Maryland case. Indeed, since plaintiff is domiciled here, Maryland is the state which has the most significant relationship to both the occurrence and the parties in a libel case like this one. *See Crowley v. Fox Broadcasting Co.,* 851 F.Supp. 700, 702 (D.Md.1994) (citing *Restatement (Second) Conflict of Laws* § 150).

After consideration of the requirements of § 1391 as applied to the sole claim remaining in the New Hampshire case, this Court concludes that plaintiff has not met his burden in that multi-defendant case of showing that venue is appropriate as to each defendant No venue exists as to defendant Menninger.[12] The New Hampshire case must therefore be dismissed for lack of venue.

■ This Court further concludes that, as the New Hampshire case has now been reconstituted, personal jurisdiction over defendants does not exist.[13] As the First Circuit held in *Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir.1995),

Jurisdiction over a defendant exists only if the claim underlying the litigation directly arises out of or relates to the defendant's forum state activities. Jurisdiction may not rest on the unilateral activity of another party or a third person. *See Gray v. St. Martin's Press, Inc.,* 929 F.Supp. 40, 45 (D.N.H.1996) (quoting *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 207–08 (1st Cir.1994)).

In *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201 (1st Cir.1994), a defendant outside the forum responded to a telephone call from a journalist inside the forum who had published the allegedly defamatory statements in the forum. The First Circuit held that the defendant was not subject to personal jurisdiction in the forum state because, even if resultant injury in the forum was foreseeable, no jurisdiction would exist where the source did not initiate the contact. *Id.* at 208, 212.

■ Here, the one remaining claim in the New Hampshire case is based on the assertion that defendants are liable because of republications by unrelated third parties. However, the sole cause of action which remains did not *directly* arise out of acts undertaken by defendants in publishing *Mortal Error* in New Hampshire. Rather, plaintiff's retaining claim arose out of the acts of third parties in republishing the book there. Defendants did not cause the tortious injury in New Hampshire which resulted from republication of the book. It was the third parties who were responsible for the tort alleged. There is no evidence in the record that defendants intended or authorized these third party republications.

Based on the facts of record here, this Court is satisfied that plaintiff cannot rely on the unilateral activities of third persons who republished the allegedly defamatory matter in order to establish personal jurisdiction over these defendants. Due process considerations of fairness would not permit a defendant to be subjected to personal jurisdiction in a New Hampshire libel case based on

---

**12.** Plaintiff's belated offer to dismiss Menninger as a defendant will be rejected. It is much too late to re-cast the defendants sued in New Hampshire in order to meet the venue requirements of 28 U.S.C. § 1391.

**13.** None of the cases cited by plaintiff support his contention that general jurisdiction over defendants existed in the New Hampshire case after the underlying libel claims had been dismissed

third-party republications of defamatory matter when that defendant was not directly involved in the third-party republications. *Alioto,* 26 F.3d at 212. Accordingly, the civil action transferred to this Court from New Hampshire is also subject to dismissal because of a lack of personal jurisdiction over the defendants.[14]

For all these reasons, defendants' motion for summary judgment will also be granted as to all claims alleged by plaintiff in Civil No. H–97–1637.

## VII

### *Conclusion*

Plaintiff's cross-motion for partial summary judgment merely seeks rulings in plaintiff's favor on several key issues in this litigation. Since the Court has decided those issues in favor of defendants and has granted defendants' motion for summary judgment,[15] plaintiff's cross-motion for summary judgment will be denied. Plaintiff's motion for certification will also be denied. An appropriate Order will be entered by the Court.

---

**14.** There is no merit to plaintiff's contention that defendant Simon & Schuster previously waived its right to contend in this Court that venue and personal jurisdiction do not now exist. The grounds supporting Simon & Schuster's present contention were not available to it when it did not challenge venue and personal jurisdiction at an early stage of the New Hampshire case.

**15.** In view of the Court's determinations of the other issues in this case, it is not necessary to address defendants' alternative argument that, since plaintiff's Baltimore County suit was dismissed with prejudice in February of 1996, principles of *res judicata* and collateral estoppel bar all remaining claims in these three consolidated cases.